[Civ. No. 15881. First Dist., Div. One. Sept. 30, 1953.]

BARBARA R. SMITH, Appellant, v. WALTER G. SMITH, Respondent.

Edises & Treuhaft for Appellant.

Carlson, Collins, Gordon & Bold and Fitzgerald, Abbott & Beardsley for Respondent.

PETERS, P. J.—Proceeding in contempt.

Barbara and Walter Smith were married in 1940, and separated in 1949. Divorce proceedings were instituted in

February of 1949. The couple had two children, Amanda born in 1943, and Eric born in 1949, after the entry of the interlocutory decree. The wife secured the divorce on the ground of cruelty. The decree became final in 1950. By that decree Barbara Smith was awarded the care and custody of Amanda, with a right of visitation in the father, and with a further right in the father to have Amanda on such week ends, holidays or vacation periods "as may be mutually agreed on by plaintiff and defendant." Nothing was said in the decree as to the custody of Eric, but after his birth he remained in the physical care and custody of his mother. Late in 1952 a dispute arose between the parties over the custody of the children, resulting in several court actions, including a motion by the father for a modification of the custody order in reference to Amanda, and for a custody order in reference to Eric. In February, 1953, the trial court entered its order modifying the divorce decree by changing the custody of Amanda from the mother to the father, and by awarding the father custody of Eric. The mother promptly appealed from such order, and such appeal is now pending in this court. The legal effect of such appeal was to stay the operation of the order appealed from, so that, pending the appeal, subject only to the order of this court, legal custody of the two children remained in the mother. (*Lerner* v. *Superior Court*, 38 Cal.2d 676 [242 P.2d 321] ; *Gantner* v. *Superior Court*, 38 Cal.2d 688 [242 P.2d 328] ; *Gantner* v. *Gantner*, 38 Cal.2d 691 [242 P.2d 329] ; *In re Barr*, 39 Cal.2d 25 [243 P.2d 787].)

After the notice of appeal was filed, the lower court, after proper notice, made its order for the support of the two children pending appeal, and as part of that order recited a stipulation of the parties that neither would "unlawfully disturb" the custody pending appeal.

The father, as permitted by law, thereafter petitioned this court for an order permitting him to have the custody of the two children pending the appeal. On April 27, 1953, this court denied the petition, but at the same time attached the following conditions to the denial order : "No delay will be countenanced in the perfecting of this appeal. If the record is not promptly filed, or if appellant's opening brief is not filed promptly, the court will entertain a motion to dismiss." The record on appeal was promptly filed. Had not respondent father sought to take the law into his own hands, the briefs in this case would have long since been filed, the

cause would have been placed on not later than our August calendar, and, very likely, by the present date, the decision on appeal would have been rendered.

But respondent was not satisfied to allow the law to take its course. With full knowledge of the legal effect of the statutory stay pending appeal, it appears from the uncontradicted affidavits filed in this proceeding, that on June 8, 1953, respondent forcefully kidnapped both children, Eric from his home, and Amanda, from her school classroom, with the intent and purpose of interfering with and defeating the jurisdiction of this court in the appeal then pending. It also appears that the children were taken to Utah by the father and secreted there. Diligent efforts of appellant and her counsel to locate the children or respondent have been unavailing. The appellant thereupon petitioned this court for an order directing respondent to return the children to this state or to show cause why he should not be found guilty of a contempt. This order to show cause was served on the attorney for respondent, appellant being unable to find respondent so as to serve him personally. Thereafter, respondent filed what he calls a "special appearance," objecting to the jurisdiction of this court over the subject matter and over his person. On July 13, 1953, this court, after a hearing, issued the following order:

"This Court finds as a fact that under the affidavits now on file, the respondent has improperly and unlawfully removed the children from the State of California.

"We further find that such acts were committed with the intent and have the legal effect of defeating the jurisdiction of this Court.

"It is therefore ordered that the respondent is ordered to return Amanda and Eric Smith to the State of California and to the custody of Barbara Smith on or before August 1, 1953.

"We retain jurisdiction to supplement this order in the event such is necessary.

"The petition for contempt and the application for attorney's fees are continued to the August 24, 1953, calendar; counsel for the respondent is granted ten days from date to file a memoranda on the points discussed at the oral argument and counsel for appellant is granted ten days thereafter to answer that memoranda."

At the August 24, 1953, hearing it developed that such order had been served on respondent's attorneys because, after diligent effort, appellant or her counsel had been unable

to locate. respondent. It also appeared at that time that the children had not been returned, and, after diligent efforts, could not be found. Although offered the opportunity to do so, counsel for respondent declined to make any argument or defense on the merits, electing to rely solely on the defenses raised upon the so-called special appearance.

It is the first contention of the respondent that the only order violated was the original custody order in reference to Amanda found in the divorce decree, and that the trial court alone has jurisdiction to punish for violation of that order. In other words, respondent contends that this court has no jurisdiction over the subject matter. The argument is unsound. From the statement of facts, *supra,* it appears that the trial court has modified the custody order in reference to Amanda, and granted such an order in reference to Eric. The mother has appealed. It is provided in section 946 of the Code of Civil Procedure that an appeal ''stays all further proceedings in the court below upon the judgment or order appealed from, or upon the matters embraced therein.'' This section has two effects: First, it deprives the superior court of all jurisdiction over any matter relating to the custody of the children pending appeal, and second, it results in the appellate court gaining an incidental jurisdiction to protect the subject matter pending the appeal.

The first of these propositions is settled beyond dispute. By the appeal the trial court has lost all jurisdiction over its prior custody orders. (*Lerner* v. *Superior Court,* 38 Cal.2d 676 [242 P.2d 321]; *Gantner* v. *Superior Court,* 38 Cal.2d 688 [242 P.2d 328]; *Gantner* v. *Gantner,* 38 Cal.2d 691 [242 P.2d 329]; *In re Barr,* 39 Cal.2d 25 [243 P.2d 787].) In the Lerner case, *supra,* it is stated (p. 680) that: ''The loss of jurisdiction [by the trial court as a result of the appeal] is so complete than even the consent of the parties is ineffective to reinvest the trial court with jurisdiction.'' In *France* v. *Superior Court,* 201 Cal. 122 [255 P. 815, 52 A.L.R. 869], it was held that, although the Constitution grants concurrent jurisdiction over habeas corpus to trial and appellate courts, the trial court, in custody cases, where an appeal has been taken, has no authority to issue the writ. In the case of *In re Lukasik,* 108 Cal.App.2d 438 [239 P.2d 492], it was held that custodial orders were so stayed by an appeal that even a guardianship proceeding instituted by third persons was void and should be stayed. The appellate court ordered that any trial court proceeding should be prohibited

"which will in any manner or to any degree affect the custody of these minors, pending the appeal." (P. 446.) The court also held (p. 445) that "the perfecting of the appeal stays the hand of the respondent court during the pendency thereof and that neither directly nor indirectly can the respondent court further act upon the subject matter of the cause, jurisdiction over which has by the appeal been transferred from respondent court to the appellate court." (See, also, *Ex parte Queirolo,* 119 Cal. 635 [51 P. 956].)

■ These cases establish that the trial court has no jurisdiction to punish by contempt or otherwise a violation of a custody order from which an appeal has been taken.

■ The above cited cases also broadly imply or directly hold that once an appeal has been taken from a custody order the appellate court has jurisdiction over any proceedings necessary to protect the subject matter pending the appeal, which, of course, would include a contempt proceeding, where appropriate. Thus, in the case of *In re Barr,* 39 Cal.2d 25 [243 P.2d 787], the appellate court properly issued habeas corpus to restore the status quo existing at the time the appeal was perfected. (See, also, *In re Browning,* 108 Cal.App. 503 [291 P. 650]; *In re Dupes,* 31 Cal.App. 698 [161 P. 276].)

The respondent seems to be laboring under the misconception that all that is involved is a violation by him of the original divorce decree awarding custody of Amanda to appellant, and contends that no appeal was taken from that order. Such argument overlooks the fact that the law provides a stay from the order appealed from, and that respondent has violated that stay. ■ This court gave respondent the opportunity to show cause why he should not be punished for kidnapping the children, but this order he ignored. This court then ordered him to return the children, which order he also ignored. Thus, he is in contempt of all of these orders.

There is both statutory and constitutional authority granting to this court the contempt power, where necessary, to protect the appellate power. Article VI, section 4b, of the Constitution, grants to appellate courts not only the power to issue prerogative writs, but also the "power to issue . . . all other writs necessary or proper to the complete exercise of their appellate jurisdiction." Section 166 of the Penal Code, in subdivision 4, provides that it is a criminal contempt if there is a "Willful disobedience of any process or order lawfully issued by any court," while subdivision 5 provides that it is a criminal contempt if there is any "Resistance

willfully offered by any person to the lawful order or process of any court.'' Section 1209 of the Code of Civil Procedure defines as a contempt (subd. 5) ''Disobedience of any lawful judgment, order, or process of the court,'' and in subdivision 8, ''Any other unlawful interference with the process or proceedings of a court.'' Section 177 of the same code provides that ''Every judicial officer shall have power . . . 2. To compel obedience to his lawful orders as provided in this code.'' The very next section provides that: ''For the effectual exercise of the powers conferred by the last section, a judicial officer may punish for contempt in the cases provided in this code.'' Section 187 of the Code of Civil Procedure contains some relevant language. It provides: ''When jurisdiction is, by the constitution or this code, or by any other statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code.''

There is at least one case where the Supreme Court found a party in contempt for violation of a stay order. That case is *Romine* v. *Cralle,* 83 Cal. 432 [23 P. 525]. While the stay in that case existed by reason of an order of supersedeas, while in the instant case it is created by operation of law, there is no legal distinction between the two situations. While in *Olcott* v. *Superior Court,* 68 Cal.App.2d 603 [157 P.2d 36], a party was held in contempt by the trial court in a situation similar to the one here involved, the opinion does not discuss the question as to whether the contempt proceeding should have been in the appellate court. That point was not raised, and therefore that case is not controlling on that issue. (*Estate of Cushing,* 113 Cal.App.2d 319 [248 P.2d 482].)

For these many reasons it must be held that this court has jurisdiction over the subject matter.

The next contention of respondent is that since he has not been personally served, this court lacks jurisdiction over his person. Respondent has made what he terms a ''special appearance,'' but in the notice counsel stated that the appearance is ''for the purpose only of objecting to the jurisdiction of this court over the respondent or over the subject matter.'' The first heading in the memoranda filed in support of the notice is: ''This court is without jurisdiction of the subject

matter or the respondent." A substantial, and, indeed, the greater portion of the memoranda is devoted to a discussion of the claimed lack of jurisdiction over the subject matter.

Whatever may be the rule in other states, the rule in California is that by objecting to the jurisdiction of the court over the subject matter as well as over the person, the party appearing must be deemed to have made a general appearance and has waived all objections to jurisdiction over his person. In the leading case of *Olcese* v. *Justice's Court*, 156 Cal. 82 [103 P. 317], it is directly held that a litigant sacrifices his objection to personal jurisdiction by, at the same time objecting to the court's jurisdiction over the subject matter. There, contrary to the law applicable to the pleadings on file, the defendant was served outside the county where the action was instituted. He moved to quash service and also demurred on the ground that the trial court had no jurisdiction of the subject matter. This was held to constitute a general appearance and a waiver of the claimed improper service. At page 87 the court stated: "For, notwithstanding the alleged defect in the service on him of the summons, if he made a general appearance in the justice's court, he will be bound by that appearance as having waived the informality of his summons. Pleas based upon lack of jurisdiction of the person are in their nature pleas in abatement and find no especial favor in the law. They amount to no more than the declaration of the defendant that he has had actual notice, is actually in court in a proper action, but, for informality in the service of process, is not legally before the court. It is purely a dilatory plea, and when a defendant seeks to avail himself of it, he must, for very obvious reasons, stand upon his naked legal right and seek nothing further from the court than the enforcement of that right. He will not be heard to ask of the court anything further than an adjudication upon his plea, and if he does ask anything further, then, by logic of the fact, he must necessarily have waived the irregularity of his summons before the court. Here is one reason for the well-settled rule that if a defendant wishes to insist upon the objection that he is not in court for want of jurisdiction over his person, he must specially appear for that purpose only, and must keep out for all purposes except to make that objection. Another reason, equally valid, is that if such defendant shall ask for any relief other than that addressed to his plea, he is seeking to

gain an unconscionable advantage over his adversary, whereby, if the determination of the court be in his favor he may avail himself of it, while, if it be against him, he may fall back upon his plea of lack of jurisdiction of the person. So it is well settled that if a defendant, under such circumstances, raises any other question, or asks for any relief which can only be granted upon the hypothesis that the court has jurisdiction of his person, his appearance is general, though termed special, and he thereby submits to the jurisdiction of the court as completely as if he had been regularly served with summons.''

*Raps* v. *Raps,* 20 Cal.2d 382 [125 P.2d 826], is closely analogous to the instant case. In that case a motion to set aside a prior divorce proceeding was made. As in the instant case, the adverse party was not served personally, but service was made upon her attorney. Such attorney objected to the jurisdiction of the trial court over the subject matter. On appeal from the order setting aside the divorce decree the appellant sought to contend that the trial court had not secured jurisdiction over her person. The court squarely reaffirmed the rule of the Olcese case, and, citing that and other cases, held (p. 384) : ''The appearance in court of the attorney in behalf of the executrix for the purpose of challenging the jurisdiction of the court to entertain the motion on the ground that the court had no jurisdiction over the subject matter, constituted a general appearance by the executrix. This is so even though it be assumed, in the absence of a record showing the fact, that the attorney also interposed an objection to the jurisdiction of the person of the executrix.'' (See, also, *Molfino* v. *Pippo,* 122 Cal.App. 437 [10 P.2d 78] ; *Lacey* v. *Bertone,* 33 Cal.2d 649 [203 P.2d 755] ; *MacPherson* v. *Superior Court,* 22 Cal.App.2d 425 [71 P.2d 91].)

Respondent argues that the rule of these cases is limited to situations where the party seeks some affirmative relief. Even if the rule were so limited, the rule would be here applicable because respondent is seeking a favorable decision on the issue of lack of jurisdiction over the subject matter and that, of course, is an attempt to secure affirmative relief.

While it is true that the rule of the Olcese and Raps cases has been criticized (see 30 Cal.L.Rev. 690; dissent of Mr. Justice Traynor in *Judson* v. *Superior Court,* 21 Cal.2d 11 at p. 15 [129 P.2d 361]), the rule of these cases has not been overruled and is binding on an intermediate appellate court. It must be held, therefore, that by objecting to the juris-

diction over the subject matter the respondent has made a general appearance that amounts to a waiver of the claimed defective service over his person.

However, even if it be held that respondent has not made a general appearance, nevertheless we are of the view that this court properly secured jurisdiction over respondent by service upon his attorneys. If this were not a contempt proceeding, there would be no doubt of the law on this subject. The court has modified the final decree as to custody. The wife has appealed. The respondent, in that proceeding, sought an order of this court to grant him custody pending appeal. In that petition for change of custody, signed and sworn to by respondent, he avers that the appeal operated as a stay, so that it definitely appears that he had full knowledge of that fact. Respondent then, in an attempt to defeat the appellate jurisdiction of this court, kidnapped the children and took them to Utah, the state of his present residence, and has there so secreted himself and the children that it has been impossible to secure personal service upon him or the children. Thus, the proceeding has been a continuous one. This contempt proceeding is part and parcel of the original divorce proceeding. Respondent has deliberately concealed himself to avoid service. Personal jurisdiction was secured over the respondent in the divorce action and in the custody proceeding. It is well settled law that once personal jurisdiction has properly attached in a continuous proceeding, parties are subject to orders made without personal service, but may be served by service on their lawyers or personal service outside the state. The leading case is *Michigan Trust Co.* v. *Ferry*, 228 U.S. 346 [33 S.Ct. 550, 57 L.Ed. 867]. In that case an administrator left state "A" and went to state "B" owing the estate over a million dollars. An action was commenced in state "A" against the administrator to recover the money. Service was secured by publication and service in state "B." Judgment was secured in state "A." In an opinion prepared by Mr. Justice Holmes it was held that state "B" had to give full faith and credit to the judgment because state "A" had continuing jurisdiction of the probate proceeding. Even though state "A" had lost physical power over the administrator, its jurisdiction to bind him by the order requiring him to repay the million dollars continued (p. 353) as "one of the decencies of civilization that no one would dispute." (See, also, *Nations* v. *Johnson*, 65 U.S. (24 How.) 195 [16 L.Ed. 628]; *Fitzsimmons* v. *Johnson*,

90 Tenn. 416 [17 S.W. 100] ; *Elasser* v. *Haines,* 52 N.J.L. 10 [18 A. 1095].)

California has expressly adopted this continuing jurisdiction concept and has applied it to divorce as a proceeding continuing after the final decree and as encompassing support and custody modifications. Thus, in *Reynolds* v. *Reynolds,* 21 Cal.2d 580 [134 P.2d 251], the rule of the Michigan Trust Company case was expressly followed in holding that where a party in a prior divorce action leaves the state and has counsel of record, valid service may be made upon his attorneys of an order to show cause to raise child support payments. (See, also, *Russ* v. *Russ,* 68 Cal.App.2d 400 [156 P.2d 767] ; *Moore* v. *Superior Court,* 203 Cal. 238 [263 P. 1009] ; *Benway* v. *Benway,* 69 Cal.App.2d 574 [159 P.2d 682] ; *Foy* v. *Foy,* 23 Cal.App.2d 543 [73 P.2d 618].)

Respondent contents himself on this phase of the argument by citing *Pennoyer* v. *Neff,* 95 U.S. 714 [24 L.Ed. 565], and *De La Montanya* v. *De La Montanya,* 112 Cal. 101 [44 P. 345, 53 Am.St.Rep. 165, 32 L.R.A. 82], contending that such cases require personal service within the state. Those cases did not discuss, because they did not involve, the continuing jurisdiction concept. Moreover, recent decisions have cut deeply into the outmoded concept that jurisdiction in personal actions is solely dependent on physical power to enforce the court's process and have recognized the need of a state to keep jurisdiction over those departing from its jurisdiction in this day and age of mobile populations. (See cases collected and discussed in *Allen* v. *Superior Court,* 41 Cal.2d 306 [259 P.2d 905].)

This continuing jurisdiction concept definitely establishes that the custody modification action and the instant show cause proceedings are part and parcel of the original continuing divorce action. If this were not a contempt proceeding the rule of these cases would obviously establish that jurisdiction over respondent was properly secured by service upon his counsel.

But this is a contempt proceeding, and respondent contends that by statute California has determined that service upon counsel of a party is not permitted in such proceedings. The statutes relied upon are sections 1015 and 1016 of the Code of Civil Procedure. They provide:

Section 1015: "When a plaintiff or a defendant, who has appeared, resides out of the State, and has no attorney in the action or proceeding, the service may be made on the clerk or

on the justice where there is no clerk, for him. But in all cases where a party has an attorney in the action or proceeding, the service of papers, when required, must be upon the attorney instead of the party, except service of subpoenas, of writs, and other process issued in the suit, and of papers to bring him into contempt. . . .''

Section 1016: ''The foregoing provisions of this chapter do not apply to the service of a summons or other process, or of any paper to bring a party into contempt.''

Respondent contends that, whatever the rule may be in other types of cases, these sections preclude substituted service upon counsel in contempt proceedings. There is some general language in a couple of cases so holding. (*Johnson* v. *Superior Court*, 63 Cal. 578; *In re Meyer*, 131 Cal.App. 41 [20 P.2d 732].) ▮ But it is also well settled that these sections do not create an absolute prohibition against substituted service in contempt proceedings. One of the leading cases modifying the seemingly absolute terms of these sections is *Shibley* v. *Superior Court*, 202 Cal. 738 [262 P. 332]. There, in a separate maintenance action, service of an order to show cause in a contempt proceeding based on a refusal to pay alimony pendente lite was made upon the attorney. The service was upheld as valid. The court noted that the following conditions warranted substituted service in that case: (1) The defendant was absent from California and could not be found; (2) defendant was a resident of California; and (3) defendant was represented by counsel in this state who were actively representing him. The court finds justification for substituted service in such a case by reliance upon the well-settled rule that where a party conceals himself in California to avoid service of a contempt citation, substituted service upon his attorney may be had. (*Foley* v. *Foley*, 120 Cal. 33 [52 P. 122, 65 Am.St.Rep. 147]; *Golden Gate Consol. H. M. Co.* v. *Superior Court*, 65 Cal. 187 [3 P. 628]; *Eureka L. & Y. C. Co.* v. *Superior Court*, 66 Cal. 311 [5 P. 490], affirmed 116 U.S. 410 [6 S.Ct. 429, 29 L.Ed. 671].) These concealments within the state cases are predicated upon the theory that every court possesses inherent jurisdiction to punish for contempt, under the code sections quoted earlier in this opinion conferring upon courts the power to punish for contempt, and that such jurisdiction cannot be defeated by the party concealing himself to avoid service.

The doctrine of the Shibley case has been followed in this state. (*Olcott* v. *Superior Court*, 68 Cal.App.2d 603 [157 P.2d

36]—where defendant was out of the state—; *Moore* v. *Superior Court,* 203 Cal. 238 [263 P. 1009].)

The Shibley case is analogous to the instant one except in one respect. There, the defendant was a resident of California and left this state to avoid service. Here, the defendant, after the original divorce proceedings, left California and has become a resident of Utah. It is averred that he is concealing himself in Utah to avoid service. This distinction, while important, is not necessarily controlling. The fundamental concept behind the so-called concealment cases is that a party cannot defeat the jurisdiction of the courts by hiding out and evading service. That concept applies whether or not the guilty party is a resident of California or of some other state, and whether he conceals himself within or without this state. (*Olcott* v. *Superior Court,* 68 Cal.App.2d 603 [157 P.2d 36].)

The Shibley case contains another holding that is directly applicable here. As an additional ground for upholding the service upon counsel in that case the court pointed out that defendant there had actual notice of the order forming the basis of the contempt proceeding and that defendant had left the state to evade the service of that order. The court held (p. 741) : ''Under such circumstances service of a copy of said order would not be required in order to put the defendant in contempt for a violation of its provisions nor to lay the foundation for the issuance by the trial court of the subsequent order to show cause why the defendant should not be cited and punished for contempt.''

This reasoning applies to the facts here involved. Respondent knew that the appeal from the custody order operated as a stay, so as to continue custody of the children in the mother. He knew this because under oath he so averred in his petition to this court for a change of custody pending appeal. With this knowledge respondent kidnapped and has secreted the children, and has concealed himself. Under the rule of the Shibley case he knew that he was then violating the statutory stay and is bound by service upon his attorneys.

 The Shibley case does not stand alone on this proposition. While it is well settled that some notification of an order is needed as the prerequisite for a valid contempt adjudication (*In re Saunders,* 76 Cal.App.2d 635 [173 P.2d 818] ; *Ruppe* v. *Superior Court,* 127 Cal.App. 118 [15 P.2d 197] ; *Bryant* v. *Superior Court,* 30 Cal.App.2d 509 [86 P.2d 837]), there are several other cases holding that notification of pending proceedings need not be formal notification, and that actual

knowledge of the same may be sufficient. (*MacPherson* v. *Mac-Pherson*, 13 Cal.2d 271 [89 P.2d 382]; *Romine* v. *Cralle,* 83 Cal. 432 [23 P. 525]; *In re Ellery*, 22 Cal.App.2d 274 [70 P.2d 690]; *Young* v. *Superior Court*, 69 Cal.App. 281 [231 P. 347]; *Mattos* v. *Superior Court*, 30 Cal.App.2d 641 [86 P.2d 1056]; *People* v. *Saffell*, 74 Cal.App.2d Supp. 967 [168 P.2d 497].)

For these many reasons it is therefore held that personal jurisdiction was properly secured over the respondent by service upon his counsel.

 Appellant also requests an allowance of attorney fees for the prosecution of the present proceeding, and an allowance for future fees that may be incurred in the enforcement of this contempt proceeding. Affidavits have been filed alleging appellant's need, and lack of funds, and respondent's ability to pay. Respondent's counsel have declined the opportunity of filing counteraffidavits. We find that appellant is in need of funds, and that respondent is able to pay. We think that a fee of $350 for services to date is reasonable. It is impractical to fix future fees at the present time. The court will retain jurisdiction to fix, if necessary, future fees, and to make an award of costs.

The court finds that respondent, Walter G. Smith, is guilty of the misdemeanor of contempt of this court in that he has committed acts in violation of subdivisions 4 and 5 of section 166 of the Penal Code, and of subdivisions 5 and 8 of section 1209 of the Code of Civil Procedure. For such violation, it is ordered, adjudged and decreed that the respondent be taken into custody and remanded to the sheriff of the county of Contra Costa, California, and that he be punished by imprisonment in the county jail of the county of Contra Costa, State of California, for one day.

It is further found by this court that it is now and will continue to be within the power of respondent to return the children Amanda and Eric Smith to California and to the custody of appellant or to the juvenile authorities of Contra Costa County. It is therefore ordered that respondent shall continue to be imprisoned after the expiration of the one-day period until he shall have returned the children Amanda and Eric Smith to the custody of their mother, the appellant Barbara R. Smith, or, in the alternative, to the physical custody of the probation officer of the county of Contra Costa, to await the further order of this court.

The sheriff of the county of Contra Costa is commanded and directed to take the respondent into custody and to imprison him in accordance with terms of this order.

It is further ordered that appellant is awarded $350 as and for attorney fees for services to date. Because of the unknown nature and extent of future services, it is impractical to now fix future fees, and the court reserves jurisdiction to make such future award when the nature and extent of the services can be ascertained. At that time the court will also consider the request for an allowance for costs incidental to this proceeding.

Bray, J., and Wood (Fred B.), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 29, 1953. Shenk, J., and Schauer, J., were of the opinion that the petition should be granted.