[Civ. No. 22591. Fourth Dist., Div. One. July 28, 1980.]

In re EDWARD H. ABRAMS on Habeas Corpus.

**COUNSEL**

Monroe & Riddet and Keith C. Monroe for Petitioner.

No appearance for Respondent.

Popko & Cornblum and Bruce Cornblum for Real Parties in Interest.

**OPINION**

**COLOGNE, Acting P. J.**—The trial court convicted petitioner Edward H. Abrams of criminal contempt of court for disobedience of a subpoe-

na duces tecum directing him to appear as a witness at the trial of a civil action. The subpoena was served on petitioner's retained attorney rather than on petitioner. Petitioner seeks a writ of habeas corpus to vacate his conviction on the ground the court lacked personal jurisdiction over him.

Habeas corpus is a proper procedure to challenge the adjudication. (E.g., *In re Buckley* (1973) 10 Cal.3d 237, 240, fn. 1 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248].) We have stayed execution of sentence to review the matter.

Code of Civil Procedure section 1987 states a subpoena must be served personally. The pertinent language is: "Except as provided in Sections 68097.1 to 68097.8, inclusive, of the Government Code,[1] the service of a subpoena is made by delivering a copy, or a ticket containing its substance, to the witness personally...." Section 1988 provides if a witness is concealing himself, the court may order service by breaking and entering. There are no other express statutory exceptions to the requirement of section 1987 of personal service of a subpoena.

Here, the trial court found there was authorization for the service on petitioner's attorney, on two theories. First, the petitioner had designated his attorney as his agent to receive service. Second, the petitioner was avoiding service, by misleading the process server into believing the attorney was authorized to receive service. The court held in either instance the service on the attorney was sufficient.

We must first determine, as a matter of law, whether substituted service of a subpoena on an attorney for a nonparty witness can ever be a valid service sufficient to confer personal jurisdiction over the witness, so that he may be punished for a criminal contempt of court if he does not obey the subpoena. If such a service may in some circumstances be permitted, we must determine whether the facts found by the trial court establish a valid service here.

This proceeding in contempt is a criminal proceeding in which petitioner must be shown guilty beyond a reasonable doubt (*Ross* v. *Superior Court* (1977) 19 Cal.3d 899, 913 [141 Cal.Rptr. 133, 569 P.2d 727]), a standard which the trial court recognized and articulated; nev-

---

[1]These sections provide a means of serving subpoenas on certain public employees. They are not pertinent here.

ertheless, we resolve any conflicts in the testimony in favor of the court's factual findings, as we would in reviewing any criminal matter on appeal, provided substantial evidence supports those findings (*In re Buckley, supra*, 10 Cal.3d 237, at p. 247).

Testimony at the hearing on the order to show cause re criminal contempt established the following facts: Petitioner, Dr. Abrams, is a medical doctor and Mr. Bernbrock is his retained attorney of many years. Real parties sought to subpoena Dr. Abrams as a percipient witness in a civil action (which has since been settled). Mr. Cornblum, attorney for real parties, gave the subpoena to process server Clarke to serve; it directed Dr. Abrams to appear as a witness on January 21, 1980, bringing with him certain medical records. According to the process server, she took the subpoena to Dr. Abrams' medical office and asked his secretary where he was. The secretary said the doctor was not in, but was expected within the next 15 minutes. Ms. Clarke waited about 25 minutes, the secretary then gave Ms. Clarke the business card of Attorney Bernbrock and directed Clarke to go to Bernbrock's office and serve him. Ms. Clarke specifically testified the secretary said she had just spoken to Dr. Abrams on the telephone and he had instructed the secretary to tell the process server to serve the attorney, Mr. Bernbrock. Ms. Clarke then went to the office of Mr. Bernbrock where, according to her, he said he could accept service on behalf of Dr. Abrams and took the paper. She declared: "He told me that he could accept service on behalf of Dr. Abrams but there was no way that he would appear."

Bernbrock admitted receiving the subpoena. He stated he told Ms. Clarke he could not accept service of the subpoena, and further he telephoned real parties' attorney, Cornblum, in the presence of Ms. Clarke and said he could not and did not accept service of the subpoena on Dr. Abrams' behalf. Bernbrock further established he wrote a letter to Cornblum the next day (Jan. 15) which stated he had received the subpoena but was not accepting process. Specifically, he wrote: "Your process server has served me with a copy of a Subpoena Duces Tecum for Dr. Abrams to appear in court January 21, 1980. . . . I am not accepting service on behalf of Dr. Abrams." The letter further stated Dr. Abrams "has a policy of not testifying in court or at depositions," and finally stated Dr. Abrams would voluntarily appear on payment of $1,000 per day expert witness fees, or alternatively would give a deposition at no charge on a Saturday morning.

Cornblum testified Bernbrock did telephone him on January 14, the day of the service, and indicated Dr. Abrams, if required to appear, would be entitled to expert witness fees (Gov. Code, § 68092.5).

Dr. Abrams testified he was never served with the instant subpoena. He knew nothing about it until an undetermined time after it was served on Bernbrock. The record does not indicate whether he knew of it before the date of the scheduled hearing, January 21.

After these events occurred, Attorney Cornblum served on Dr. Abrams an affidavit charging criminal contempt of court, based on his nonappearance on January 21. A hearing took place February 6, 1980, at which Bernbrock contested validity of the service of the subpoena on Dr. Abrams. After further argument, the court decided the service was sufficient, as stated above; adjudged Dr. Abrams guilty of a contempt of court; and imposed the following punishment: four days in the county jail, or in lieu thereof, Dr. Abrams must spend four consecutive Thursdays in the courthouse from 9 a.m. until 4 p.m. to observe a trial and be thereby informed of the operation of the American judicial system. In addition, Dr. Abrams was ordered to pay $500 fees to Cornblum as damages for contempt, and a $500 fine. Except for the condition of observing court trials, the punishment imposed was authorized by the following statutes: Code of Civil Procedure section 1992 provides a witness validly subpoenaed who willfully fails to appear must pay the party aggrieved $500 plus all damages that party incurs. Code of Civil Procedure section 1218 provides the punishment, after a judgment of contempt, of a fine up to $500 or up to five days' imprisonment, or both. The penalties and the civil remedy are cumulative (*Church* v. *Payne* (1939) 35 Cal.App.2d Supp. 752 [97 P.2d 819]).

We turn to the issue of the validity of the substituted service of the subpoena on a nonparty witness.

Code of Civil Procedure section 1209, subdivision (9), makes "disobedience of a subpoena duly served" contempt of court. Similarly, Code of Civil Procedure section 1991 punishes disobedience of a subpoena as a contempt of court. As we stated above, the only statutes specifically regulating service of such subpoenas—Code of Civil Procedure sections 1987 and 1988—provide for either personal service on the witness or service on a concealed witness, after court order, by breaking and entering.

In upholding this service, the trial court cited precedent which has developed regarding service of a summons. Although Code of Civil Procedure section 415.10 establishes personal service as the preferred method of serving summons, the following statutes, section 415.20 et seq., provide alternate methods of service, such as by mail, leaving at usual place of abode, or service at place of business. Further, section 416.90, stating the general rule of personal service where no other is specified, specifically provides personal service includes service on an authorized agent. The statute says: "A summons may be served on a person not otherwise specified in this article by delivering a copy of the summons and of the complaint to such person *or to a person authorized by him to receive service of process.*" (Italics added.) This language specifically permits satisfying the personal service requirement by serving an authorized agent. There is no such language in section 1987 authorizing personal service of a witness subpoena. Hence, the ostensible agency cases which have developed regarding service of summons, such as *Warner Bros. Records, Inc.* v. *Golden West Music Sales* (1974) 36 Cal.App.3d 1012 [112 Cal.Rptr. 71], are not controlling on the validity of service of a subpoena on an agent.

In support of its ruling here, the trial court cited the *Warner Bros.* case, *supra*, and other cases which permit various substituted services of summons. It relied also on Civil Code section 2332 which in certain circumstances imputes the agent's knowledge to his principal. These authorities, however, do not address substituted service of a witness subpoena, nor the larger issue here of permitting modes of service not specifically authorized by statute.

In addition to the lack of express statutory authorization for serving witness subpoenas on agents, service of a subpoena differs from service of summons because the penalty for disobeying a subpoena may be much more serious than that for not responding to a summons, hence it is much more important to maximize the probability of notice to the contemner than to the usual defendant. Not answering a summons normally will produce a default judgment for the payment of money, which may sometimes be later set aside under Code of Civil Procedure section 473 or an analogous procedure. Nonresponse to a subpoena may result in money damages plus five days' imprisonment. The difference in possible consequences may help explain why the Legislature has provided many different modes of serving summons, but one, personal delivery, for serving a subpoena.

Real parties have argued because an order to show cause re contempt may in some instances be served other than personally, even without statutory authorization for such substituted service, a witness subpoena should also be governed by those rules. Normally, personal service of the order to show cause on the alleged contemner is a jurisdictional prerequisite to a contempt order. (5 Witkin, Cal. Procedure (2d ed. 1971) Enforcement of Judgment, § 162, p. 3523, and cases cited therein, e.g., *Kroneberger* v. *Superior Court* (1961) 196 Cal.App.2d 206, 210 [16 Cal.Rptr. 339].) That rule is not based on a statutory requirement of personal service of the affidavit, however, for no statute specifically regulates its service. Rather, it is a judicially created rule, believed necessary because the order to show cause is an original pleading in a quasi-criminal action. Courts have, therefore, fashioned certain exceptions to that rule without having to confront the problem of legislative regulation of the field.

Some cases have permitted a substituted service of the order to show cause on the person's attorney, for example, in these circumstances: The alleged contemner was once subject to the court's personal jurisdiction, generally as a party litigant. The court order allegedly disobeyed was made when the court still had personal jurisdiction over the party. The party was present in court, either actually or constructively through his attorney, when the order issued. The party later violated the order, but could not be personally served with the affidavit charging contempt. Under such circumstances, substituted service has been authorized as an exercise of the court's continuing jurisdiction to enforce its valid orders. In these cases, the original order which the contemner disobeyed —analogous to the subpoena here—was invariably communicated to the contemner during an ongoing lawsuit. The alleged contemner, therefore, unquestionably knew of his obligation. (See, e.g., such cases as *Shibley* v. *Superior Court* (1927) 202 Cal. 738 [262 P. 332]; *Smith* v. *Smith* (1953) 120 Cal.App.2d 474, 485 [261 P.2d 567]; *Foley* v. *Foley* (1898) 120 Cal. 33 [52 P. 122]; *Golden Gate Consol. H. M. Co.* v. *Superior Court* (1884) 65 Cal. 187 [3 P. 628]; *Eureka L. & Y. Co.* v. *Superior Court* (1885) 66 Cal. 311 [5 P. 490]; *Olcott* v. *Superior Court* (1945) 68 Cal.App.2d 603 [157 P.2d 36]; *Moore* v. *Superior Court* (1928) 203 Cal. 238 [263 P. 1009].) Most of these cases involved post-dissolution proceedings, and attempted enforcement of support or custody orders. The cases dealt with the conceptual difficulty of the enforcement procedure being a new, independent action, i.e., a contempt proceeding, either by finding no absolute statutory prohibition

against a substituted service of a contempt charge (*Shibley, supra*, and *Foley, supra*), or by articulating the maxim a party cannot defeat the jurisdiction of the court to punish for contempt by concealing himself to avoid service (*Olcott, supra*, and *Moore, supra*), or by articulating the continuing jurisdiction concept already alluded to which justifies service on, for example, the party's attorney because the enforcement is still part of a continuing case during which notices and papers were validly served on the attorney (*Smith* v. *Smith, supra*). Also certain courts relied on the general authority of Code of Civil Procedure section 187, providing a court may evolve suitable modes to carry its jurisdiction into effect (*Smith* v. *Smith, supra*). (See general discussion of the subject at 5 Witkin, Cal. Procedure (2d ed. 1971) Enforcement of Judgment, § 162, p. 3523.)

Although superficially these cases might appear to justify substituted service of a subpoena on similar grounds, in fact they differ from the situation here as follows: First, service of a subpoena on a witness is an original exercise of jurisdiction over him, rather than an act of continuing jurisdiction. Second, in all the foregoing cases, the substituted service was approved ahead of time by the court; the person unable to serve the contemner went into court and obtained an order providing for service on, e.g., the attorney. Here, the procedure used and urged as appropriate did not provide for such advance approval, but rather, the court approved the substituted service after the fact. Because the court had not in advance of the substituted service ruled on its validity, and because no precedent in this state or anywhere else specifically authorizes such service, and because the statutes expressly require personal service, the contemner had no notice such substituted service might be found valid on any ground, including the ground of fraudulent scheme to avoid service. The lack of notice is an abridgement of due process in the context of this criminal procedure. In the continuing jurisdiction cases, in contrast, the alleged contemner was on notice that a court had examined the facts of his evasion and found they justified a substituted service, which the court devised and ordered.

Real party has argued the common law permitted substituted service on an agent before enactment of the specific sections of the Code of Civil Procedure regulating service, hence the absence of an authorizing statute for a particular substituted service is unimportant. Yet, the California cases have consistently enforced the requirement of strict statutory compliance for all types of constructive and substituted ser-

vice, even where authorized by statute. Compliance with the statutory conditions for a constructive service is jurisdictional (*Sousa* v. *Freitas* (1970) 10 Cal.App.3d 660, 667-668 [89 Cal.Rptr. 485]). "No person is compelled to act in a judicial proceeding in which jurisdiction over her person has not been obtained." (*Id.*, at p. 668, citing *Lapham* v. *Campbell* (1882) 61 Cal. 296, 300.) Mere knowledge of the action is not a substitute for service, nor does it raise any estoppel to contest the validity of service (*Slaybaugh* v. *Superior Court* (1977) 70 Cal.App.3d 216, 223 [138 Cal.Rptr. 628]; *Ursino* v. *Superior Court* (1974) 39 Cal.App. 3d 611, 617 [114 Cal.Rptr. 404]; *Stamps* v. *Superior Court* (1971) 14 Cal.App.3d 108, 110 [92 Cal.Rptr. 151]; *Sternbeck* v. *Buck* (1957) 148 Cal.App.2d 829, 833 [307 P.2d 970]; *Chaplin* v. *Superior Court* (1927) 81 Cal.App. 367 [253 P. 954]). In the *Chaplin* case, Chaplin admittedly was avoiding service in the divorce action and had full knowledge of its pendency and of the attempts to serve him, but the court held whether or not he was evading process he must be personally served before the court would have jurisdiction over him. Compliance with the statutory procedure was mandatory. The court distinguished the concealment cases discussed above, such as *Foley* v. *Foley, supra*, 120 Cal. 33; they involve acts of continuing jurisdiction rather than an original service of process. Likewise in *Sternbeck* v. *Buck, supra*, a service made within 100 feet of the person to be served, on his wife, who accepted for him, was found invalid because not a personal delivery as required by the statute. The court stated it had no power judicially to rewrite the statute regarding service of process. "The Legislature is available for that service" (*id.*, at p. 833). Similarly in *Chapman* v. *Superior Court* (1968) 261 Cal.App.2d 194 [67 Cal.Rptr. 842], where a doctor's receptionist was served as the custodian of his records when in fact she was not, the witness was held not to be "duly served" and, therefore, could not be punished for a contempt of court.

The Restatement of the Law, Judgments, discusses in section 8 at page 46 et seq. the question when noncompliance with statutory requirements will cause a judgment to be void. Whether noncompliance with statutory requirements voids a judgment is a question of local law. Assuming compliance with constitutional requirements of notice and due process, the question in some places is whether the procedure used has a reasonable probability of ensuring notice to the defendant; but in other jurisdictions, the courts insist on compliance with the statutes regardless of the factual notice or lack of it (*id.*, com. b, pp. 47-48). California is a jurisdiction which in general requires strict statutory

compliance with requirements for service of original process (see 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, §§ 75, 78, 81, 83, at pp. 599, 603, 605, 608).

The court in *In re Morelli* (1970) 11 Cal.App.3d 819 [91 Cal.Rptr. 72], discusses the significance of the distinction between service of an original process and service of later notices and papers after the court has acquired personal jurisdiction. The court was concerned with a non-party expert witness' refusal to obey a subpoena to appear at a deposition. The issue was not service of the original subpoena, but of the order to show cause re contempt, which was served by mail on the attorney. There was actual notice. "There was no question but what Morelli got the word." (*Id.*, at p. 837.) The order to show cause had been reissued after an intervening writ proceeding, causing the contempt proceeding to be technically a new action rather than a continuation of the first proceeding in which the subpoena was served. The court validated the attorney service, pointing out factually Morelli was in the position of a person over whom jurisdiction has been acquired. He had an attorney already representing him in that action, unlike the person served for the first time. Therefore, the applicable requirements were those for service of notices and other papers during the action rather than those for service of original process such as summons. The court specifically analogized service of summons and service of papers to bring a party into contempt as initiating papers served before a party necessarily has a lawyer, and pointed out in those situations personal service is required (*id.*, at p. 835). The first papers are jurisdictional; after that, papers have only a notice function which may in a given case be satisfied by service on the attorney or other agent (*id.*, at p. 838). That reasoning would require treating a witness subpoena, such as we have here, as an initiating or jurisdictional paper, like a summons. ▮ Accordingly, strict compliance with the statute (Code Civ. Proc., § 1987) requiring personal service is prerequisite to punishment for disobedience to the process.

Even in the case of service of summons, there are narrow exceptions to the requirement of manual physical delivery. (See, e.g., *In re Ball* (1934) 2 Cal.App.2d 578, 579 [38 P.2d 411].) Attempted delivery to a recalcitrant defendant, *in his presence*, is permitted. Examples are collected in *Sternbeck* v. *Buck, supra*, 148 Cal.App.2d 829, at page 833, and include flinging the process at a retreating defendant while telling him what it is, or putting it under the windshield of his retreating automobile. These cases do not rewrite the requirement of personal service

and permit some other service, but rather, analyze the facts of the service and find they are tantamount to a personal delivery. Such an analysis might also apply to serving a witness subpoena in a suitable case. Here, however, the service was out of the presence of the witness, on another person, and cannot be described as a personal delivery.

The facts here may appear to cry out for punishment of the defendant who has been found deliberately to evade the reasonable processes of the court and who has shown himself more desirous of guaranteed expert witness fees standing on technicalities than respect for the efficient administration of justice. The time and expense he has personally consumed in this matter, as well as that which he has selfishly taken from the court, both at the trial level as well as here, should weigh heavily on his conscience. Yet our adherence to the law is required if we are ever to instill respect for it. Further, we do not deal with a situation without remedies for the affront to the court's ability to proceed in an effective manner. Punishment for criminal contempt is drastic, not lightly to be invoked. (E.g., *Warner* v. *Superior Court* (1954) 126 Cal. App.2d 821, 827 [273 P.2d 89].) The better part of valor here might have been to send the process server out again with instructions to effect a personal service. Here, however, the process was not served in the manner required by law and defendant may not be criminally punished for failure to obey the subpoena. It was not "duly served" to support a finding of contempt of court.

The judgment of conviction of contempt is annulled and the defendant is ordered to be discharged. Our temporary stay of execution of sentence shall remain in effect until this judgment becomes final.

Staniforth, J., and Wiener, J., concurred.

A petition for a rehearing was denied August 11, 1980, and the petition of real parties in interest for a hearing by the Supreme Court was denied September 24, 1980.