[No. F015801. Fifth Dist. May 22, 1992.]

In re GILBERTO M., a Person Coming Under the Juvenile Court Law.
FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff
and Respondent, v.
MAXIMINO M., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of the Discussion and parts III through V.

COUNSEL

Margaret B. Crow, under appointment by the Court of Appeal, for Defendant and Appellant.

Max E. Robinson and Phillip S. Cronin, County Counsel, and Nancy P. Kelly, Deputy County Counsel, for Plaintiff and Respondent.

Aggie Rose-Chavez, under appointment by the Court of Appeal, for Minor.

OPINION

BUCKLEY, J.—

### FACTUAL AND PROCEDURAL HISTORY

On November 20, 1989, Gilberto M. was taken into protective custody. His mother, Martha M., had been shot to death in a domestic disturbance between her roommate and her roommate's boyfriend.

Appellant Maximino M. is the stepfather of Martha, having previously married Martha's mother. When Martha was 12, appellant brought her from Mexico to the United States. Impregnated by appellant, Martha bore Gilberto M., her stepfather's son, just prior to her 15th birthday.

In May 1989, when Gilberto was about two and one-half years old, his mother Martha reported to police that she had been raped by appellant. Appellant was arrested and charged with two felony rape counts under Penal Code section 261, subdivision (a)(6) "[w]here the act is accomplished against the victim's will by threatening to retaliate." Appellant pled guilty to one of the two counts and was sentenced to the eight-year aggravated term in October 1989. In rendering sentence, the judge stated: "the circumstances in aggravation involve a premeditated offense, violating a position of trust as victim's stepfather. The victim was particularly vulnerable, having been a stepdaughter and living in the home of the defendant."

Because of his mother's death and appellant's imprisonment, Gilberto was detained and placed in foster care on November 22, 1989. At the detention hearing, the court found that a prima facie case had been made. At the jurisdiction/disposition hearing, the Department of Social Services (DSS) recommended that reunification services be provided to appellant. The re-unification plan approved by the court included individual counseling, parenting classes and a requirement that appellant provide stable housing for the minor. The county was ordered to arrange visitation. Appellant was neither present nor represented by counsel at either of these proceedings.

Shortly thereafter, social worker Arredondo wrote to appellant in Spanish to advise him of the reunification plan. The letter explained that the court had ordered him to participate in various programs and he had 12 months in which to comply. Arredondo also called appellant in prison and spoke to him or his counselors several times during the reunification period. At no time did appellant request a visit with his son.

Appellant wrote three letters to the DSS regarding the minor.[1] In the letters, appellant indicated he was the grandfather of the minor and asked for information about the child's welfare. Throughout the reunification period, appellant consistently represented himself to DSS as the minor's grandfather, rather than as his father.[2]

---

[1] Appellant does not read or write English or Spanish. The letters were written on his behalf by a third party and were signed by both appellant and the third party.

[2] No issue is raised as to actual paternity. Apparently it is not disputed that, in fact, appellant is the biological father.

During the reunification period, no visitation occurred between the minor and appellant.[3]

Prior to the six-month section 366.21 review,[4] the public defender was appointed to represent appellant. Appellant was represented by counsel at all further proceedings.

At the conclusion of the section 366.21 hearing, the court found appellant had been convicted of a felony indicating parental unfitness. The court stated: "the father was convicted of . . . rape, pursuant to Penal Code Section 261, paragraph 6. It was a breach of his trust in that he should have been in a parental relationship with the minor, Maurilla, the minor's Gilberto's mother. And he breached that trust. It was a violent crime and it certainly indicates to this Court parental unfitness." The court then ordered that the matter be set for a section 366.26 hearing within 120 days to determine whether parental rights should be terminated.

The minor was placed with Pasqual and Rachel Reyes in January 1990, where he has remained. At the section 366.26 hearing, Mrs. Reyes testified she considered the minor "my baby, my world." Mr. Reyes indicated he fell in love with Gilberto at first sight. Mr. and Mrs. Reyes have been married over 11 years and want to adopt Gilberto. They are willing to be financially responsible for Gilberto should they be permitted to adopt him. During the period of time that Gilberto has been with the Reyeses, there has been no contact between appellant and the minor, except when Gilberto saw appellant on one occasion in the courtroom.

Social worker Villalon, an expert in adoption matters, testified that adoption was in the best interests of the minor because there was no bond between the minor and his father. Social worker Hancock, another expert, testified that the termination of appellant's parental rights would not be detrimental to the minor.

---

[3]DSS representatives insisted that no visitation occurred because appellant never requested it. Appellant testified he wanted visitation and attempted to get permission for visitation by contacting DSS and prison officials. In any event, the court noted at the Welfare and Institutions Code section 366.26 hearing that if a finding regarding the adequacy of reunification services had been required, a finding could not have been made that adequate services had been provided.

All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[4]Section 366.21, subdivision (e) provides in pertinent part:

"At the review hearing held six months after the initial dispositional hearing, the court shall order the return of the minor to the physical custody of his or her parents or guardians unless, by a preponderance of the evidence, it finds that the return of the child would create a substantial risk of detriment to the physical or emotional well-being of the minor. . . .

". . . If the court finds by clear and convincing evidence that the parent has been convicted of a felony indicating parental unfitness, the court may schedule a hearing pursuant to Section 366.26 within 120 days."

At the conclusion of the section 366.26 hearing, the court found Gilberto to be adoptable. It also found that because no regular contact had been maintained between appellant and Gilberto, termination of the parental relationship would not be detrimental to the minor.

DISCUSSION*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## I. *Due Process*

■ Appellant contends there is no evidence the petition commencing the dependency proceeding was ever served on him. He asserts that, absent proper notice, the court lacked authority to issue pertinent orders.[5] Assuming proper notice was not given, we conclude appellant's failure to raise the defect at the section 366.21 hearing constitutes a waiver of the issue on appeal.

In the case of *In re B. G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244], the father removed his two children from Czechoslovakia without their mother's knowledge. Eventually the father brought the children to his parents' home in California. The children were cared for by neighbors of the grandparents. The father died, after expressing his wishes that the children not return to Czechoslovakia but that they be cared for by his mother. The father's wishes were that if his mother was not available, then the neighboring foster parents provide care for the children. The probation department scheduled a dependency hearing and notified the grandparents. No effort was made to notify the children's mother in Czechoslovakia despite the fact that the grandparents were in contact with her. In August 1969, the juvenile court adjudged the children dependents of the court and placed them with foster parents. At an annual review in August 1970, the court confirmed the prior disposition. The mother received no notice of that hearing either.

---

*See footnote, *ante*, page 1194.

[5]Pursuant to rule 1407(f)(1) of the California Rules of Court, if a child is detained, the notice and a copy of the petition shall be served on the parent or guardian personally or by certified mail, return receipt requested, as soon as possible after the petition is filed and at least five days before the hearing. This provision is also contained in section 337, subdivision (a). Rule 1440(c) of the California Rules of Court requires the social worker to serve each parent and guardian with a copy of the petition and with written or oral notice of the time and place of the detention hearing. If it appears that the parent or guardian does not read English, notice must be given in the language believed to be spoken by the parent or guardian. There is no indication in the clerk's transcript that this notice was provided.

At each hearing under section 300 et seq., the court shall determine whether notice has been given as required by law, and shall make an appropriate finding noted in the minutes. (Cal. Rules of Court, rule 1412(j).) In the present case, at both the detention hearing and the jurisdiction/disposition hearing, the court found that proper notice had been duly given.

The mother first appeared by counsel in November 1971. She did not seek to terminate jurisdiction nor did she challenge the validity of the 1969 order. To the contrary, she filed points and authorities asking the court to transfer custody to her. When the foster parents subsequently attacked the court's jurisdiction to modify custody by a motion to dismiss and by a petition for habeas corpus, the mother stipulated that the juvenile court had personal jurisdiction over her after July 1969 and she expressly waived any defect in the notice. The mother appealed from the juvenile court's order continuing the court's jurisdiction over the children and denying her legal and physical custody. She argued that the juvenile court never had jurisdiction of the children.

Finding that the failure to give proper notice when it could have been given was a defect fatal to the previous jurisdictional proceeding, our Supreme Court held[6] that the subsequent efforts of the mother to obtain a transfer of custody to her constituted an acknowledgement of the court's jurisdiction.

In so holding, the court relied on *In re Etherington, supra,* 35 Cal.2d 863. There, the petitioner mother claimed the court was without jurisdiction to adjudge her son a ward of the juvenile court because she was not given notice of the hearing as required by the statute. The mother did not receive the required statutory notice and learned of the scheduled proceedings only an hour or so before they were to commence. At her request, the proceedings were continued to the next day when the mother and her counsel appeared. Neither she nor her counsel made any request for a further continuance nor protested the lack of notice as specified by statute. The Supreme Court held that under these circumstances, the mother's conduct must be deemed to have constituted a waiver of any insufficiency in that respect as a jurisdictional requirement. (*Id.* at p. 867.)

Although not argued by appellant, we note a distinction between the salient procedural facts of *In re B. G., supra,* 11 Cal.3d 679, and those presented here that warrants brief discussion. In *B. G.,* the mother undertook *affirmative* steps to obtain a transfer of custody by filing a motion; here, at appellant's first appearance (at the section 366.21 hearing), he was *resisting* the termination of reunification (and urging that meaningful reunification efforts were never made).

---

[6]Because the mother, in addition to seeking affirmative orders from the trial court, also stipulated to the court's personal jurisdiction over her, there is some uncertainty as to whether the Supreme Court squarely held that the mother's affirmative action, *by itself,* constituted a waiver of a later challenge to the court's jurisdiction. However, the court's citation of *In re Etherington* (1950) 35 Cal.2d 863 [221 P.2d 942] (which did not involve a stipulation), is informative.

Nevertheless, we note the application of well-settled law in cases not involving dependency, holding that a party waives all jurisdictional objections to a proceeding, including lack of notice, by opposing or resisting the proceeding on its merits. (*366-388 Geary St., L.P.* v. *Superior Court* (1990) 219 Cal.App.3d 1186, 1193 [268 Cal.Rptr. 687]; *Tate* v. *Superior Court* (1975) 45 Cal.App.3d 925, 930 [119 Cal.Rptr. 835]; *Smith* v. *Smith* (1953) 120 Cal.App.2d 474, 483 [261 P.2d 567]; *Otsuka* v. *Balangue* (1949) 92 Cal.App.2d 788, 792 [208 P.2d 65].) In fact, the *Smith* court specifically rejected the argument that any more than simple opposition on the merits of a contested motion or proceeding is required before a waiver of jurisdictional defects will be held to have occurred, writing:

"Respondent argues that the rule of these cases is limited to situations where the party seeks some affirmative relief. Even if the rule were so limited, the rule would be here applicable because respondent is seeking a favorable decision on the issue of lack of jurisdiction over the subject matter and that, of course, is an attempt to secure affirmative relief." (*Smith* v. *Smith, supra,* 120 Cal.App.2d at p. 482.)

We conclude that by his participation in the section 366.21 hearing, appellant acknowledged the jurisdiction of the juvenile court and is precluded from challenging it here.[7]

## II. *Failure to Appoint Counsel*

██ Our analysis and conclusion that appellant waived any deficiency of notice by subsequently appearing and litigating without objection is applicable to and also precludes any challenge on appeal of the court's failure to appoint counsel at the proceedings prior to the section 366.21 hearing. Once a waiver has occurred, as here, it is unimportant whether the right to counsel is merely statutory (§ 317) or is a right of constitutional significance, as argued by appellant. His failure to raise it then precludes his raising the issue now. (Cf. *In re B. G., supra,* 11 Cal.3d 679; *Smith* v. *Smith, supra,* 120 Cal.App.2d 474.)

---

[7]Our conclusion that appellant's failure to object to the jurisdiction of the court at the section 366.21 hearing constituted a waiver of the right to later allege jurisdictional error also resolves his contention on appeal that he was denied his right under Penal Code section 2625 to be transported to the proceedings conducted prior to the section 366.21 hearing. No objection having been made at the time he appeared at the section 366.21 hearing of any prior violation of his rights under Penal Code section 2625, he cannot now complain on appeal. (Cf. *In re B. G., supra,* 11 Cal.3d 679.)

## III.-V.\*

．．．．．．．．．．．．．．．．．．．．．．．．．．．

### Disposition

The judgment is affirmed.

Martin, Acting P. J., and Ardaiz, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 12, 1992.

---

\*See footnote, *ante*, page 1194.