Filed 6/25/24; on rehearing

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| In re the Marriage of MONIQUE COVINGTON MOORE and CHARLES MOORE, | |
| --- | --- |
| MONIQUE COVINGTON MOORE, Plaintiff and Respondent, v. CHARLES MOORE, Defendant; ROCKET LAWYER, INC. Appellant. | A165038 (San Francisco City & County Super. Ct. No. FDI20793151) |

| In re the Marriage of MONIQUE COVINGTON MOORE and CHARLES MOORE, | |
| --- | --- |
| MONIQUE COVINGTON MOORE, Plaintiff and Respondent, v. CHARLES MOORE, Defendant; ACENDI INTERACTIVE COMPANY, LLC Appellant. | A165039 (San Francisco City & County Super. Ct. No. FDI20793151) |

1

These consolidated appeals arise from marital dissolution proceedings between plaintiff Monique Covington Moore (Covington) and defendant Charles Moore.  During discovery, Covington served deposition subpoenas for production of business records on nonparties Rocket Lawyer, Inc. (Rocket Lawyer) and Acendi Interactive Company, LLC (Acendi) (collectively appellants).  After appellants asserted objections and refused to comply with most all of the subpoenas' demands, Covington filed a motion to compel their compliance under Code of Civil Procedure section 2025.480.[1]  The trial court granted the motion in substantial part and ordered appellants to each pay Covington $25,000 in monetary sanctions.  Appellants now raise numerous claims of error regarding the trial court's rulings on the timeliness of Covington's motion against Rocket Lawyer, the sufficiency of her attempts to meet and confer with Acendi, and the reasonableness of the monetary sanctions award, among other matters.  We agree with only one of their contentions and hold that the fees and costs Covington incurred in mediation as meet and confer attempts after her discovery motions were already filed were not compensable as discovery sanctions because they were not incurred as part of the necessary costs of bringing the motions.  (*Ghanooni v. Super Shuttle* (1993) 20 Cal.App.4th 256, 262 (*Ghanooni*).)  Accordingly, we reverse the orders in part and remand for redetermination of the sanctions awards. In all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We glean the following facts from the parties' trial court briefings and submissions regarding the discovery at issue.

Covington and Moore were married from 1998 until March 2020 when Covington commenced these divorce proceedings.  Moore is the chairman of

---

[1]     Unspecified statutory references are to the Code of Civil Procedure.

the board and chief executive officer of legal technology company Rocket Lawyer. He is also the managing member and an officer of Acendi.

According to Covington, both Acendi and Rocket Lawyer were formed during the parties' marriage, and Covington worked at both companies from their dates of formation to the start of this litigation. Covington maintains that she and Moore are 100 percent owners of Acendi (even though ownership is in Moore's name), and that Acendi holds approximately 24 percent of Rocket Lawyer stock. Acendi's ownership interest in Rocket Lawyer is, according to Covington, the most significant of the marital estate.

In March 2021, the trial court entered a stipulated protective order governing discovery of records from Rocket Lawyer, Acendi, and another nonparty entity.

**A. The Rocket Lawyer Subpoena**

Unless otherwise indicated, the following events occurred in 2021.

On January 22, Covington's counsel issued a deposition subpoena for production of business records on Rocket Lawyer (hereafter the 1/22 subpoena). A copy of the 1/22 subpoena was mailed to Rocket Lawyer's custodian of records on February 2. The 1/22 subpoena identified 14 categories of documents relating to valuations of Rocket Lawyer, Covington's interest in Rocket Lawyer, Moore's employment with Rocket Lawyer, including his income and expenses paid by the company, and other corporate governance and financial information of the company.

Rocket Lawyer's counsel, Prashanth Chennakesavan, contacted Covington's counsel and received a 30-day extension for Rocket Lawyer to respond to the deposition subpoena. Counsel for both sides met and conferred over the subpoena, during which Chennakesavan argued for "attorneys' eyes only" protection for any documents produced.

3

On March 23, Rocket Lawyer served written responses and objections to the 1/22 subpoena. Rocket Lawyer asserted an objection to the subpoena for lack of personal service, as well as substantive objections to each of the document demands on the grounds they were vague, ambiguous, and unintelligible; overly broad and unduly burdensome; not relevant or reasonably calculated to lead to the discovery of admissible evidence; violative of third-party privacy rights; duplicative of discovery already produced by or more easily obtained from parties to the action; and violative of the attorney-client privilege and/or work product doctrine.

On March 26, Covington served an identical subpoena on Rocket Lawyer's records custodian (the 3/26 subpoena), this time personally. On April 15, Rocket Lawyer served its written objections to the 3/26 subpoena, lodging the same substantive objections as before.

**B. The Acendi Subpoena**

On March 16, Covington's counsel personally served Acendi's custodian of records with a deposition subpoena for the production of 16 categories of documents: (1) Acendi "valuation" documents and reports; (2) Acendi "governance documents"; (3) documents evidencing Acendi "membership interest(s) and capitalization"; (4) Acendi board-meeting minutes relating to Moore's work, ownership, and interest in Acendi; (5) Acendi "investor letters"; (6) documents "reflecting financings or investment offerings"; (7) documents reflecting Covington's interest in Acendi; (8) agreements between Moore and Acendi; (9) documents evidencing payments from Acendi to Moore; (10) documents regarding any Acendi plan for deferred compensation to Moore; (11) "documents evidencing ownership interests offered or received by" Moore from Acendi; (12) expense account statements and requests for reimbursements from Moore to Acendi; (13) statements for credit cards

4

issued by Acendi to Moore; (14) documents reflecting any "actual or proposed sale" or other transfer of Moore's interest in Acendi; (15) Acendi "financial statements"; and (16) "documents referring to the type and scope of any business, or line of business, conducted by Acendi." (Capitalization omitted.)

On April 19, Acendi served its written responses and objections to the deposition subpoena. Acendi objected to each document request on the grounds they were vague, ambiguous and unintelligible; overbroad and unlimited; and irrelevant to the litigation, as "Acendi is not a party to the litigation and no individual has any ownership rights over Acendi property." Notwithstanding its objections, Acendi agreed to produce publicly filed documents regarding Acendi's formation and its current incorporation status in response to request no. 2. As to request no. 10, Acendi stated no documents exist.

### C. Motions to Compel

#### 1. *Against Rocket Lawyer*

On June 14, Covington filed a motion to compel Rocket Lawyer to comply with the 3/26 deposition subpoena. In her moving papers, Covington requested $10,000 in monetary sanctions.

In opposition, Rocket Lawyer argued that the motion was untimely and that the requests were overbroad. Rocket Lawyer requested over $14,000 in sanctions against Covington for fees incurred in opposing the motion.

#### 2. *Against Acendi*

On June 18, Covington filed a motion to compel Acendi's compliance with the deposition subpoena by producing documents in response to request nos. 1–9 and 11–15. The motion was supported by a "Concise Summary Per [Cal. Rules of Court, rule] 3.1345(b)" and the declaration of Covington's attorney, Nina Drucker, describing her efforts to meet and confer with

5

Acendi's counsel, Richard Zuromski.  Covington requested $7,000 in sanctions against Acendi.

Acendi opposed the motion, arguing that Covington failed to adequately meet and confer prior to filing the motion, and that the requests were overbroad, burdensome, uncertain, and unintelligible.  Acendi sought in excess of $12,000 in sanctions against Covington for attorney fees incurred in opposing the motion.

### 3. *Mediation*

After the moving and opposition papers were filed, but prior to the hearing on the motions, counsel for Covington, Acendi, and Rocket Lawyer attended two full-day mediation sessions in November 2021 and January 2022.  There is no dispute that the purpose of this mediation was to attempt to resolve the discovery disputes in question.

Following the mediation, counsel for Covington, Acendi, and Rocket Lawyer each filed supplemental declarations in the trial court seeking additional sanctions amounts for mediation-related expenses, including preparation work, attendance, and post-mediation communications.[2]

---

[2]    Covington's counsel, Jeff Riebel, stated in his supplemental declaration that Covington incurred $74,389 in total mediation-related attorney fees and costs, and that "[a]t least 70% of this work is attributable to issues surrounding the Rocket Lawyer subpoena" while "the other 30% was attributable to the Acendi . . . subpoena[.]"  Thus, Covington sought $52,072 in mediation-related sanctions from Rocket Lawyer and $22,316.70 in such sanctions from Acendi.

Rocket Lawyer's counsel, Chennakesavan, sought an additional $28,305 for mediation-related and other expenses.  Acendi's counsel, Richard Zuromski, sought an additional $17,860 for mediation-related and other expenses.

6

**D. The Trial Court's Rulings**

After a hearing, the trial court issued its findings and orders on March 16, 2022. The court granted Covington's motion against Rocket Lawyer as to 9 of the 14 document demands in the deposition subpoena. In some instances, the court ordered that the names and identifying information of nonparties be redacted, and that the temporal scope of production be limited to January 1, 2018, rather than the requested January 1, 2016 date or Rocket Lawyer's date of inception. The court further ordered that the production of documents was subject to the March 2021 protective order. Finally, the court found that "Rocket Lawyer did not act with the requisite substantial justification with respect to resisting, in its entirety, these requests," and the court imposed $25,000 in monetary sanctions.

As for Acendi, the trial court ordered Acendi's compliance as to 10 of the 14 document demands subject to the motion.[3] As to nos. 1–4, 9, 12, and 13, the court ordered redaction of the names and identifying information of nonparties. The court also limited the temporal scope of production for no. 1 to the "most recent 409A valuation" for Acendi, and to January 1, 2018, for nos. 9, 12, 13, and 15. The court ordered that the production of documents was subject to the March 2021 protective order. Finally, the court found that Acendi "did not act with the requisite substantial justification with respect to resisting, in its entirety, these requests" and imposed $25,000 in monetary sanctions.

---

[3]     In assessing Covington's overall success on the motion, we disregard the trial court's rulings on nos. 10 (grant) and 16 (deny) because they were not part of Covington's motion.

Rocket Lawyer and Acendi each filed timely notices of appeal from the trial court's orders.[4] We consolidated the appeals for briefing, argument, and decision.

## DISCUSSION

"In civil litigation, discovery may be obtained from a nonparty only through a 'deposition subpoena.'" (*Unzipped Apparel, LLC v. Bader* (2007) 156 Cal.App.4th 123, 127 (*Unzipped*), citing § 2020.010, subd. (b).) A deposition subpoena may be issued by an attorney of record for any party (§ 2020.210, subds. (a), (b)), and may command a nonparty to appear and give testimony, produce business records for copying, or both, and to produce other documents, electronically stored information, and tangible things (§ 2020.020, subds. (a)–(c)). To be effective, a deposition subpoena that is directed at an organization must be served by personal delivery "to any officer, director, custodian of records, or to any agent or employee authorized by the organization to accept service of a subpoena." (§ 2020.220, subd. (b)(2).)

"If a deponent fails to answer any question or to produce any document, electronically stored information, or tangible thing under the deponent's control that is specified in the . . . deposition subpoena, the party seeking discovery may move the court for an order compelling that answer or production." (§ 2025.480, subd. (a).) "This motion shall be made no later than 60 days after the completion of the record of the deposition, and shall be accompanied by a meet and confer declaration under Section 2016.040." (*Id.*, subd. (b).)

---

[4] Covington, Rocket Lawyer, and Acendi each argue, and we agree, that the orders in question are appealable under the collateral order doctrine. (See *Sanchez v. Westlake Services, LLC* (2022) 73 Cal.App.5th 1100, 1107; *Diepenbrock v. Brown* (2012) 208 Cal.App.4th 743, 746.)

8

"The court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel an answer or production, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2025.480, subd. (j).)  The term "substantial justification" means a justification that "is clearly reasonable because it is well grounded in both law and fact." (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434 (*Doe*).)

" 'We review the trial court's order imposing the sanction for abuse of discretion.  [Citation.]  We resolve all evidentiary conflicts most favorably to the trial court's ruling [citation], and we will reverse only if the trial court's action was " ' "arbitrary, capricious, or whimsical." ' " [Citation.]' [Citations.] ' "It is [the appellant's] burden to affirmatively demonstrate error and, where the evidence is in conflict, this court will not disturb the trial court's findings." [Citation.]  To the extent that reviewing the sanction order requires us to construe the applicable discovery statutes, we do so de novo, without regard to the trial court's ruling or reasoning.' " (*Clement v. Alegre* (2009) 177 Cal.App.4th 1277, 1285–1286 (*Clement*).)

### A. Rocket Lawyer's Appeal

#### 1. *60-Day Deadline for Motions to Compel*

Rocket Lawyer contends the trial court erred in granting the motion to compel because Covington did not file the motion within 60 days of Rocket's Lawyer's service of written objections to the 1/22 subpoena, which marked "the completion of the record of the deposition" for purposes of triggering the 60-day clock under section 2025.480, subdivision (b).  Rocket Lawyer further contends that Covington's service of the 3/26 subpoena did not reset the 60-

9

day clock based on Rocket Lawyer's service of objections to that subpoena because a party cannot avoid the consequences of its delay in moving to compel by serving the same discovery a second time. Because these contentions involve the application of a statutory standard to undisputed facts, our review is de novo. (*Unzipped*, *supra*, 156 Cal.App.4th at p. 129.)

Rocket Lawyer relies on a trio of cases interpreting the phrase "the completion of the record of the deposition" under section 2025.480, subdivision (b). In *Unzipped*, the court held that the record of the deposition was complete, and the 60-day clock began to run, on the deposition subpoena's date of production when the nonparty deponents asserted objections and declined to produce responsive documents. (*Unzipped*, *supra*, 156 Cal.App.4th at pp. 128, 131–136.) In *Rutledge v. Hewlett-Packard Co.* (2015) 238 Cal.App.4th 1164 (*Rutledge*) and *Board of Registered Nursing v. Superior Court* (*Johnson & Johnson*) (2021) 59 Cal.App.5th 1011 (*Board of Registered Nursing*), the courts likewise held that the record of the deposition was complete for purposes of the 60-day clock upon the nonparties' service of objections to the deposition subpoena. (*Board of Registered Nursing*, at p. 1031; *Rutledge*, at p. 1192.)

As Covington points out, however, the validity of service of the deposition subpoenas in each of those cases was never challenged or in doubt. (See *Board of Registered Nursing*, *supra*, 59 Cal.App.5th at p. 1021 ["defendants served business record subpoenas on four nonparty state agencies"]; *Rutledge*, *supra*, 238 Cal.App.4th at p. 1191 ["appellants served a deposition subpoena on Bizcom"]; *Unzipped*, *supra*, 156 Cal.App.4th at p. 128 ["Unzipped obtained and served two 'Deposition Subpoena[s] for Production of Business Records' "].) This distinction is meaningful because a deposition subpoena that has not been personally served in compliance with section

10

2020.220 imposes no obligations on a nonparty deponent. (See *In re Abrams* (1980) 108 Cal.App.3d 685, 693 (*Abrams*) [no person is compelled to act in judicial proceeding in which jurisdiction over person has not been obtained].) Put another way, it is the personal service of the deposition subpoena that triggers a nonparty's obligation to comply with the subpoena's commands and subjects them to potential sanctions for disobedience, including punishment for contempt. (See §§ 2020.220, subd. (c)(1)–(3) ["[p]ersonal service of any deposition subpoena is effective to require" nonparty's compliance], 2020.410, subd. (c) [compliance date cannot be earlier than 20 days after issuance of subpoena or 15 days after service, whichever is later], 2025.440, subd. (b) [court may impose sanctions, including punishment for contempt, on disobedient deponent "on whom a deposition subpoena has been served"].)

Because *Unzipped*, *Rutledge*, and *Board of Registered Nursing* each interpreted the statutory phrase "the completion of the record of the deposition" in the context of a deposition subpoena that was legally effective to compel compliance, the rationale underlying these decisions is inapt for the circumstances of this case. In *Unzipped* and *Board of Registered Nursing*, the courts explained that because a business records subpoena typically results in either a partial production based on a few objections or no production at all based on more extensive objections, once the subpoenaing party receives either of these responses, it "has all of the information it needs to prepare a motion to compel." (*Unzipped, supra,* 156 Cal.App.4th at p. 133; see *Board of Registered Nursing, supra,* 59 Cal.App.5th at p. 1033.) In other words, the 60-day clock began to run upon the service of objections because at that point, the discovery dispute is ripe for a motion to compel.

The same cannot be said here. At the time Rocket Lawyer served its objections to the 1/22 subpoena, the discovery dispute was not ripe for a

11

motion to compel because there was no personally served subpoena that could compel Rocket Lawyer's compliance.  (See § 2020.220, subd. (c)(1)–(3).)  To apply *Unzipped* and its progeny on these facts would effectively mean that Covington was on the clock to bring a motion that was likely doomed to fail without its merits ever being addressed.

At oral argument, Rocket Lawyer belatedly contended that any service defects were waived by its service of a substantive response to the 1/22 subpoena and pre-response meet and confer.  We are not persuaded.  Setting aside the tardiness of this contention on appeal, the fact that Rocket Lawyer acknowledged the existence of the defective 1/22 subpoena did not constitute a waiver of its objection to service; indeed, Rocket Lawyer expressly preserved that objection in response to each of the subpoena's document demands.  (See *Abrams*, *supra*, 108 Cal.App.3d at p. 693 [knowledge of defectively-served deposition subpoena does not estop nonparty from contesting validity of service].)

As such, Covington reasonably responded to Rocket Lawyer's service of process objection by effectuating valid, personal service of a new deposition subpoena.  Notably, Rocket Lawyer cites no authority that prohibited her from doing so.  Rocket Lawyer's reliance on *Professional Career Colleges, Magna Institute, Inc. v. Superior Court* (1989) 207 Cal.App.3d 490 (*Professional Career*) is misplaced.  There, the court held that a plaintiff who propounded a first set of interrogatories but did not move to compel further responses within the applicable 45-day deadline could not "avoid the consequences of his delay and lack of diligence by propounding the same question again" in a second set of interrogatories.  (*Id.* at p. 494.)  *Professional Career* is distinguishable in that the same interrogatory was propounded a second time after it had already been properly propounded,

12

whereas here, Covington properly served only one deposition subpoena—the 3/26 subpoena.

In the absence of applicable authority, Rocket Lawyer fails to persuade us that, as a matter of law, Covington did not timely file her motion on June 14, exactly 60 days after Rocket Lawyer served its objections to the only subpoena personally served upon it.

### 2. *Protective Order*

Rocket Lawyer contends the trial court abused its discretion by ordering compliance with the deposition subpoena without ordering two-tier protection, including a so-called "attorneys' eyes only" tier, for any financial and trade secret information produced. Covington argues, and we agree, that Rocket Lawyer forfeited this argument by failing to present it to the trial court in connection with Covington's motion to compel.

The failure to raise an issue in the trial court forfeits the claim of error on appeal. (See *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767.) Rocket Lawyer insists the issue was adequately preserved because its opposition brief below recounted counsels' meet and confer discussions over the need for attorneys' eyes only protection. But Rocket Lawyer made no request to the trial court to include such protection in its ruling on the motion to compel. Rocket Lawyer cites no authority suggesting that a trial court abuses its discretion by failing to add protective measures sua sponte based on its general awareness of matters discussed during meet and confer talks.

Rocket Lawyer's reply brief claims it raised the attorneys' eyes only issue at the hearing. But if anything, the cited portion of the record underscores Rocket Lawyer's knowing forfeiture of the matter. At the hearing, Chennakesavan told the trial court, "With respect to the protective order *I don't think it's properly before you*. But there have been discussions if

13

you look at our exchanges about . . . an additional tier. [¶] . . . . What we did request [an] additional tier [for], *I don't believe this is quite ripe yet because it's not before the Court on a request for order or a motion*, is for additional protection on an [attorneys' eyes only] basis for narrow categories of documents."[5] (Italics added.) In other words, Rocket Lawyer's attorney explicitly told the court that the dispute over attorneys' eyes only protection was still being discussed among counsel and was not currently before the court. And even after the court made its ruling, Rocket Lawyer apparently failed to request the protective tier it claims should have been ordered. As such, Rocket Lawyer's accusation that the trial court "simply ignored the issue" rings hollow.

For these reasons, we conclude Rocket Lawyer forfeited its argument that the trial court abused its discretion by failing to include attorneys' eyes only protection in connection with its order on the motion to compel.

### 3. *Sanctions Award and Amount*

Rocket Lawyer contends the trial court's sanctions award was an abuse of discretion because the court based its decision on Rocket Lawyer's conduct of " 'resisting . . . these requests,' " without finding that Rocket Lawyer's opposition to the *motion* was unjustified. This argument is meritless. Regardless of the trial court's phrasing of the factual basis for the sanctions award, there is no dispute that Rocket Lawyer unsuccessfully opposed Covington's motion to compel. Thus, section 2025.480, subdivision (j), mandates the imposition of monetary sanctions against Rocket Lawyer.

---

[5]      Contrary to Chennakesavan's assertions at oral argument, the record reflects it was he—not "the other side"—who told the trial court the issue of two-tier protection was not before the court at that time.

14

Moreover, by requiring monetary sanctions "under Chapter 7 (commencing with Section 2023.010)[,]" section 2025.480, subdivision (j), expressly incorporates the authorization under section 2023.030, subdivision (a), for imposition of monetary sanctions against one engaging in "the misuse of the discovery process." Section 2023.010, subdivision (e), defines such misuse as including "[m]aking, without substantial justification, an unmeritorious objection to discovery." Thus, the trial court's finding that Rocket Lawyer unjustifiably resisted the deposition subpoena was a valid basis for the award of sanctions under the general sanctions provisions incorporated into section 2025.480, subdivision (j).

Rocket Lawyer further challenges the $25,000 sanctions award on the ground that Covington's request was "inflated by hours spent 'meeting and conferring.' " On this score, Rocket Lawyer fails to provide cogent argument and citation to supporting legal authority, which typically would result in forfeiture of the contention. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.) However, in light of our consolidation of the appeals and Acendi's similar (and more developed) arguments on this pure question of law, we elect to reach the issue for both appellants. For the reasons discussed in more detail in part B.5, *post*, we conclude that although expenses incurred during the meet and confer process are generally compensable as a discovery sanction, the trial court improperly awarded sanctions for mediation-related fees and costs that Covington incurred after she filed her discovery motions, as such expenses were not part of the necessary costs of bringing the motions.

**B. Acendi's Appeal**

Acendi's appeal challenges the trial court's finding that Acendi lacked substantial justification to oppose the motion to compel, as well as the

15

amount of the awarded sanctions. Accendi insists its opposition was substantially justified on the grounds that (1) Covington failed to adequately meet and confer prior to filing the motion; (2) Covington failed to include the requisite separate statement with her moving papers; and (3) the document requests were overbroad and unduly burdensome. As to the amount of the award, Acendi contends that the court was not authorized to include mediation-related fees and costs (which were part of the litigants' efforts to meet and confer after Covington's motion to compel was filed), and that the amount awarded was excessive and unreasonable.

### 1. *Additional Facts*

At all relevant times, Covington was represented by the DeLacey Riebel Shindell law firm (the DeLacey firm). Again, the following events all occurred in 2021 unless otherwise indicated.

On June 14—56 days after Acendi served its responses and objections to Covington's deposition subpoena—a legal assistant at the DeLacey firm emailed a two-page meet and confer letter by attorney Drucker to Acendi's counsel, Zuromski. Two others at the DeLacey firm, attorney Jeff Riebel and paralegal Navid Ramirez, were copied on this email.

Drucker presented five arguments in her letter: first, because Acendi was 100 percent owned by Moore in name, "there is no reason why all requested documents should not be produced voluntarily, and in response to the subpoena pursuant to [Moore's] fiduciary duties and disclosure duties to [Covington]"; second, Acendi's lengthy and unmeritorious objections were part of Moore's efforts to stonewall Covington from obtaining documents and information about her own assets in this case; third, Acendi failed to produce the documents it stated it would produce in response to demand no. 2; fourth, Acendi is a community property company where Covington worked, and she

16

regularly communicated with Moore regarding the inner workings of Acendi, as demonstrated in an "attached email"; and finally, Acendi's privacy objections were meritless, as Acendi had already successfully obtained a robust protective order from the trial court. Drucker also requested an extension of time to file a motion to compel.

Zuromski responded by email the following morning, June 15, informing Drucker that her June 14 letter did not have the attachment it referenced. A few minutes later, Drucker sent Zuromski the attachment and reiterated her request for a motion extension.

The next morning (June 16), Drucker sent Zuromski a voicemail and email "attempting to meet and confer with you regarding the Acendi subpoena." Drucker attempted to narrow the dispute to "simple question[s]" that could "help us move forward—is [Moore] the sole member of Acendi? If [Moore] is not the sole member, how many others are there and what percentage of the LLC do they own? What valid reason does [Moore] have, as sole owner of Acendi, to not produce all documents and records related to same? [¶] Why would the protective order that you proposed and which the Court adopted not be sufficient to cover the production of documents in response to the subpoena?" Drucker closed by stating that because she had not received a response regarding her extension request, she would commence preparation of the motion to compel and seek monetary sanctions against Acendi.

Just over an hour later, at 10:30 a.m., Zuromski attempted to respond to Drucker by email. However, the sole addressee was paralegal Ramirez. Zuromski contended that Drucker's "eleventh hour" meet and confer efforts were inadequate but said he would grant Drucker's request for a motion extension.

17

On June 18, Covington filed her motion to compel Acendi's compliance with the deposition subpoena, and paralegal Ramirez emailed a courtesy copy of the motion to Zuromski. In a supporting declaration, Drucker stated that Zuromski "did not respond to our request for an extension on the deadline to file the Motion to Compel" and that she had not heard from him after leaving a voicemail and follow-up email on June 16.

Zuromski responded on Sunday, June 20, asking, "Will there be any response to my email regarding your failure to meet and confer, or will we be meeting and conferring before you file this?" Drucker responded shortly thereafter, claiming she had not received a response from Zuromski on her extension request and informing him that the motion had already been filed.

The following day, June 21, Drucker informed Zuromski that his June 16 email was sent to "a paralegal on our team, addressing her as 'Ms. Drucker[,]' " and "was inadvertently not brought to my attention." Drucker proposed to continue to "meet and confer in the interim period and see if we can reach a resolution."

## 2. *Sufficiency of Meet and Confer Efforts*

A motion to compel compliance with a deposition subpoena "shall be accompanied by a meet and confer declaration under Section 2016.040" (§ 2025.480, subd. (b)), which "shall state facts showing a reasonable and good faith attempt at an informal resolution of each issue presented by the motion" (§ 2016.040). This requirement "is designed 'to encourage the parties to work out their differences informally so as to avoid the necessity for a formal order. . . .' [Citation.] This, in turn, will lessen the burden on the court and reduce the unnecessary expenditure of resources by litigants through promotion of informal, extrajudicial resolution of discovery disputes." (*Townsend v. Superior Court* (1998) 61 Cal.App.4th 1431, 1435 (*Townsend*).)

18

"A reasonable and good faith attempt at informal resolution entails something more than bickering . . . .  Rather, the law requires that counsel attempt to talk the matter over, compare their views, consult, and deliberate." (*Townsend*, *supra*, 61 Cal.App.4th at p. 1439.)  "Argument is not the same as informal negotiation," and "debate over the appropriateness of an objection, interspersed between rounds of further interrogation, does not . . . constitute an earnest attempt to resolve impasses in discovery." (*Id.* at pp. 1437–1438.)  Instead, " '[t]he parties must present to each other the merits of their respective positions with the same candor, specificity and support during informal negotiations as during the briefing of discovery motions.  Only after all the cards have been laid on the table, and a party has meaningfully assessed the relative strengths and weaknesses of its position in light of all available information, can there be a "sincere" effort to resolve the matter.' " (*Id.* at p. 1435.)

Determining the adequacy of an attempt at informal resolution contemplates the exercise of judicial discretion.  "The level of effort at informal resolution which satisfies the 'reasonable and good faith attempt' standard depends upon the circumstances.  In a larger, more complex discovery context, a greater effort at informal resolution may be warranted.  In a simpler, or more narrowly focused case, a more modest effort may suffice.  The history of the litigation, the nature of the interaction between counsel, the nature of the issues, the type and scope of discovery requested, the prospects for success and other similar factors can be relevant.  Judges have broad powers and responsibilities to determine what measures and procedures are appropriate in varying circumstances." (*Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 431 (*Obregon*).)  "A trial judge's perceptions on such matters, inherently factual in nature at least in part, must not be

19

lightly disturbed." (*Ibid.*) Discretion is abused when the court's decision exceeds the bounds of reason or transgresses the confines of the applicable principles of law. (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 789 (*Cornerstone*).)

Emphasizing that Covington waited 56 days after being served with Acendi's objections to initiate meet and confer talks, Acendi insists "[t]his delay alone undermines the reasonableness of her effort." Acendi additionally argues that Drucker's June 14 meet and confer letter was inadequate because it made only broad pronouncements and did not lay out the factual and legal grounds requiring a different response on any specific discovery demand. Acendi further maintains that because the trial court never explicitly addressed the meet and confer issue in its order, there are no factual findings to which we may defer.

We are not convinced that Acendi has demonstrated the trial court's decision exceeded the bounds of reason or transgressed the confines of applicable law. (*Cornerstone*, *supra*, 56 Cal.App.5th at p. 789.) As a threshold matter, we reject the contention that we may not imply findings to support the ruling. Acendi cites no authority requiring a trial court to make express findings on the sufficiency of meet and confer efforts; as such, we may infer all findings necessary to support the court's decision. (See *Pulte Homes Corp. v. Williams Mechanical, Inc.* (2016) 2 Cal.App.5th 267, 272.)

While it is true that Covington failed to provide an explanation for initiating meet and confer talks so close to the 60-day motion deadline, the timing of meet and confer efforts is but one factor in a broader analysis. (See *Obregon*, *supra*, 67 Cal.App.4th at pp. 432–433.) As indicated, other relevant factors include the legitimacy and breadth of the discovery sought, the complexity of the dispute, the history of the litigation, the nature of the

interactions between counsel, the nature of the issues, and the prospects for success. (*Id.* at p. 433.)

Here, the trial court presumably found that Covington had legitimate discovery objectives, since it granted her motion to compel in substantial part. The court could also have reasonably concluded that this discovery matter—which involved two individuals who owned and/or managed the third party deponent—was not so large and complex as to require a greater effort at informal resolution. We may also fairly assume the court was aware of the history of this litigation, including prior orders compelling Moore to respond to Covington's discovery requests, which, in light of Moore's role and purported ownership interest in Acendi, could have reasonably impacted the court's view of Acendi's discovery conduct. Given that Covington had legitimate discovery objectives in seeking discovery against Acendi but was met with numerous boilerplate objections and a near complete refusal to comply, the court could reasonably have found that the prospects for further success were dim, and that Drucker's initial letter and follow-up communications on June 16 constituted an adequate and sincere attempt to apprise Acendi of the weaknesses of its position. (*Obregon*, *supra*, 67 Cal.App.4th at p. 432.)

Acendi criticizes the brevity of Drucker's initial letter but cites no authority requiring extensive analysis of each demand and objection in every case, particularly where, as here, Covington's position rested on broader arguments about the relevance of the discovery and the existing protections afforded to Acendi under the previously issued protective order. Moreover, Drucker followed up her initial letter with further communications that reflected a reasonable attempt to narrow the focus of the dispute. When she did not immediately hear back from Zuromski on her extension request—a

21

miscommunication attributable in part to Zuromski's failure to send his June 16 email to the person he was purporting to respond to—it appeared reasonable for Drucker to go forward with filing the motion in the belief that Zuromski had refused her request for an extension of time.

Finally, Acendi argues that even if the trial court was within its discretion to accept Covington's "bare-bones efforts," it was still an abuse of discretion for the court to conclude Acendi had no reasonable legal or factual basis to point out the deficiencies. We are ultimately unpersuaded for two reasons. First, Acendi's argument about the motion being premature was beside the point because the trial court was sanctioning Acendi for its wholesale refusal to produce documents, which is most naturally understood as a condemnation of the unreasonable set of objections Acendi served. Acendi's sanctionable discovery misconduct was complete (see § 2023.010, subd. (e)) before Covington's efforts at meet and confer.

Second, Acendi raised the meet and confer issue in order to convince the trial court to deny the motion outright, without providing the requisite facts and argument to support such a consequential decision. "[N]ot every finding that additional informal resolution efforts are required can be categorized as a failure so egregious as to justify summary denial of discovery. Such categorical rulings should be reserved for cases of clear intent to burden or harass, cases of clear flaunting of statutory responsibilities, cases of established track records of lack of good faith, and the like." (*Obregon*, *supra*, 67 Cal.App.4th at p. 434.) Here, Acendi identified no conduct reflecting a clear intent on Covington's part to burden or harass, or a clear flaunting of statutory responsibilities, or an established track record of a lack of good faith during discovery. Accordingly, the trial court could reasonably have concluded that Acendi failed to show this was an

22

"egregious" case justifying summary denial of discovery and that Acendi's attempt to have the motion denied outright was not well grounded in law or fact. (*Doe*, *supra*, 200 Cal.App.4th at p. 1434.)

### 3. *Separate Statement*

Acendi next contends it was substantially justified in opposing the motion because Covington failed to submit a separate statement. We may quickly dispose of this contention.

The California Rules of Court[6] provide that a motion to compel production of documents at a deposition must be accompanied by a separate statement, which is "a separate document filed and served with the discovery motion that provides all the information necessary to understand each discovery request and all the responses to it that are at issue." (Rule 3.1345(c).) When a motion fails to include a separate statement, a trial court is "well within its discretion" to deny the motion. (*Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 893.) However, a separate statement is not required "[w]hen a court has allowed the moving party to submit—in place of a separate statement—a concise outline of the discovery request and each response in dispute." (Rule 3.1345(b)(2).)

Here, Acendi acknowledges that Covington included a concise outline in support of her motion but maintains she was required to obtain prior court permission to do so. However, rule 3.1345(b) does not impose a prior permission requirement, and we may reasonably infer from the trial court's granting of the motion that it exercised its inherent discretion to accept Covington's concise outline in lieu of a separate statement. (See *Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 409, fn. 14 [separate statement rule "does not limit a trial

---

6       Further rule references are to the California Rules of Court.

23

court's discretion to compel further answers notwithstanding the absence of a separate statement"].)  The contention is rejected.

### 4. *Partial Success*

Acendi next contends the trial court's finding of no substantial justification was arbitrary and capricious because the court agreed with Acendi on many counts and ordered responses that were reduced in number, substance, and time.  We again are unconvinced that Acendi has shown an abuse of discretion.  That the court denied the motion on a handful of requests, limited the temporal scope of others, and allowed for redactions of nonparty information does not eclipse the fact that the court rejected Acendi's main arguments in support of its flat refusal to comply with most of the deposition subpoena's demands.  Acendi may have been willing, when opposing Covington's motion, to produce documents with a scope approximating what the trial court eventually ordered, but any such concession came too late, as Acendi had already engaged in discovery misconduct by responding to the deposition subpoena with a flat refusal to produce documents not already in the public domain.  (See § 2023.010, subd. (e).)  "The trial court could look at the whole picture of the discovery dispute and was well within its discretion in rejecting [Acendi's] claim of substantial justification."  (*Clement, supra*, 177 Cal.App.4th at p. 1292.)

### 5. *Sanctions Amount—Meet and Confer Efforts*

Acendi contends the trial court erred in awarding monetary sanctions for Covington's mediation-related expenses because nothing in the Civil Discovery Act authorizes the award of sanctions for meet and confer efforts, which must occur prior to the filing of a discovery motion, and because here the mediation was conducted after Covington filed her motion.  This appears to be an issue of first impression that requires us to interpret the Civil

24

Discovery Act's provisions on monetary sanctions, misuse of the discovery process, and the meet and confer requirement.

" 'As in any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] 'We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent.' [Citations.] The plain meaning controls if there is no ambiguity in the statutory language." (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.)

Section 2023.030 empowers a court to "impose a monetary sanction ordering that one engaging in the misuse of the discovery process . . . pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." (§ 2023.030, subd. (a).) The phrase "as a result of that conduct" reflects a principle of causation. (*Cornerstone*, *supra*, 56 Cal.App.5th at p. 790.) It must be shown the expenses requested as sanctions were reasonably incurred because of the other side's misuse of the discovery process. Misuses of the discovery process include failing to respond or submit to an authorized method of discovery; making, without substantial justification, an unmeritorious objection to discovery; making or opposing, unsuccessfully and without substantial justification, a motion to compel or limit discovery; and making an evasive response to discovery. (§ 2023.010, subds. (d)–(f).)

A propounding party may obtain relief for such conduct by filing an appropriate motion to compel compliance with its discovery. (See, e.g., §§ 2025.450 [compliance with deposition notice], 2025.480 [compliance with

25

deposition subpoena], 2030.300 [further response to interrogatories], 2031.310 [further response to inspection demand], 2033.290 [further response to request for admission].)  Expenses directly associated with such motions include filing fees, copying costs, and attorney fees incurred in researching the issues, drafting the moving papers, reviewing any opposition papers, drafting any reply papers, and attending the hearing on the motion.  (See *Cornerstone*, *supra*, 56 Cal.App.5th at p. 790 ["Reasonable expenses may include attorney fees, filing fees, referee fees, and other costs incurred"].)

Attorney fees incurred during efforts to meet and confer are no less integral to the process of obtaining relief for discovery abuses as these more direct expenses.  As discussed, a motion to compel compliance with a deposition subpoena "shall" be accompanied by a meet and confer declaration. (§ 2025.480, subd. (b).)  The same is required for other types of motions to compel.  (See §§ 2025.450, subd. (b)(2), 2030.300, subd. (b)(1), 2031.310, subd. (b)(2), 2033.290, subd. (b)(1).)  Thus, in order to bring a motion to compel discovery, the propounding party must first engage in reasonable and good faith attempts at informal resolution and then document those efforts in a declaration filed with the motion.  A failure to do so may jeopardize the movant's ability to obtain relief for the other side's alleged misuse of the discovery process.  (See *Townsend*, *supra*, 61 Cal.App.4th at pp. 1438–1439; *Obregon*, *supra*, 67 Cal.App.4th at pp. 433–434.)  Because the efforts a movant expends in meeting and conferring are, as a general matter, directly and causally related to the other side's misuses of the discovery process, the costs of such efforts may reasonably constitute compensable expenses incurred "as a result of that conduct."  (§ 2023.030, subd. (a).)

Although we are not aware of any case law directly on point, our view is consistent with decisions interpreting the "as a result of" phrase in section

26

2023.030. For instance, in *Ghanooni, supra*, 20 Cal.App.4th 256, the trial court awarded the defendants in a personal injury action $3,100 in sanctions for the plaintiff's failure to submit to X-rays. Of that amount, $2,100 "was based on attorney fees and costs defendants incurred in the preparation and argument of the motion to compel; the remaining $1,000 was imposed as a penalty on plaintiff for failing to comply with her discovery obligations." (*Id*. at p. 262.) The court concluded the $1,000 amount was impermissible as a discovery sanction because it "was unrelated to the expenses defendants incurred in compelling plaintiff to submit to X-rays." (*Id*. at pp. 262–263.) Relying on *Lund v. Superior Court* (1964) 61 Cal.2d 698 (*Lund*),[7] *Ghanooni* held that statutory provisions permitting sanctions for fees incurred " 'as a result of' " misuses of the discovery process " 'contemplate only that a defaulting party may be assessed the costs of bringing the motion, including attorneys' fees.' " (*Ghanooni*, at p. 262.)

That reasoning applies here. To the extent Covington incurred fees and expenses in meeting and conferring with Acendi prior to bringing her motion to compel under section 2025.480, subdivision (b), they are appropriately considered part of the necessary " 'costs of bringing the motion' " to compel Acendi's compliance. (*Ghanooni, supra,* 20 Cal.App.4th at p. 262.)

By the same token, meet and confer expenses may be awarded as sanctions *against* a propounding party that misuses the discovery process by

---

[7] In *Lund*, the Supreme Court held that a $1,100 sanctions award was not authorized where the figure reflected "the costs for the time of two attorneys and one court reporter who stood by to take a deposition which they had been told would not be attended by the witnesses (and for which they served subpoenas after being advised that the court had lost jurisdiction because of the lapse of five years)." (*Lund, supra,* 61 Cal.2d at p. 715.)

"[m]aking . . . , unsuccessfully and without substantial justification, a motion to compel . . . discovery." (§ 2023.010, subd. (h).) Just as a prevailing movant incurs meet and confer expenses as part of the " 'costs of bringing the motion' " against an entity that misuses the discovery process (*Ghanooni*, *supra*, 20 Cal.App.4th at p. 262), so too does an opponent that prevails against a movant's misuse of the discovery process. Accordingly, when a prevailing opponent incurs meet and confer expenses "as a result of" the moving party's misuse of the discovery process, such expenses are compensable as discovery sanctions. (§§ 2023.030, subd. (a), 2023.010, subd. (h).)

This is not to say that all meeting and conferring expenses must be compensated. Like monetary sanctions generally, an award of sanctions for time spent meeting and conferring must be reasonable in amount. (§ 2023.030, subd. (a); *Cornerstone*, *supra*, 56 Cal.App.5th at p. 791.) Moreover, the prevailing party's attempts at informal resolution must be reasonable and in good faith. (§§ 2016.040, 2023.010, subd. (i).) Thus, an unreasonable and/or bad faith expenditure of time in the name of meeting and conferring should not be rewarded, and we again emphasize that the party requesting sanctions for meet and confer expenses must causally link the expenses to the other side's misuse of the discovery process (*Cornerstone*, at p. 790). In some cases, meet and confer expenses may not be compensable because only after an exchange of views in the meet and confer process could an opponent's discovery conduct be characterized as lacking "substantial justification." (§ 2023.010, subds. (e), (h).) Finally, as with any request for sanctions, the trial court retains broad discretion to use rational methods to reduce a requested amount in order to reach a reasonable award. (*Cornerstone*, at p. 791; see *Parker v. Wolters Kluwer United States, Inc.*

28

(2007) 149 Cal.App.4th 285, 294 [affirming award of one-third of sanctions requested]; *Mattco Forge, Inc. v. Arthur Young & Co.* (1990) 223 Cal.App.3d 1429, 1436–1437 [affirming award of one-quarter of sanctions requested].)

In sum, we conclude, based on the statutory language and available case law, that costs and fees incurred during the meet and confer process are not outside the scope of compensable expenses for purposes of monetary sanctions under the Civil Discovery Act.

Having determined that meet and confer expenses are generally compensable, we now turn to Acendi's more specific point that because meet and confer efforts "are supposed to happen *before* a motion is filed," but the mediation here occurred after Covington's motion was filed and fully briefed, the mediation-related fees could not be included in the sanctions award. In response, Covington criticizes Acendi for taking an inconsistent position on this issue in the trial court proceedings below, where Acendi sought sanctions against Covington for its own mediation-related fees and expenses. Covington further maintains that her mediation-related fees and costs were reasonably incurred as a result of Acendi's misuse of discovery because the mediation was part of a meet and confer process.

We conclude Acendi ultimately has the better position. While there is no dispute that the mediation sessions in November 2021 and January 2022 constituted further attempts to meet and confer on the discovery dispute in question, meet and confer expenses are compensable as discovery sanctions only when they are incurred as part of the " 'costs of bringing [or opposing] the motion.' " (See *Ghanooni*, *supra*, 20 Cal.App.4th at p. 262.) Applying this principle, we conclude that expenses incurred during a voluntary mediation of a discovery dispute that occurs *after a motion to compel has been filed* are not reasonably construed as part of the costs of bringing that motion. Indeed,

29

nothing in section 2025.480 or any other section of the Civil Discovery Act requires post-filing meet and confer efforts in furtherance of a pending discovery motion. To the contrary, a declaration documenting reasonable and good faith efforts at informal resolution is required only when a motion is filed. (See, e.g., §§ 2025.450, subd. (b)(2), 2025.480, subd. (b), 2030.300, subd. (b)(1), 2031.310, subd. (b)(2), 2033.290, subd. (b)(1).)

Certainly, post-motion efforts to informally resolve a discovery dispute are laudable and may align with the goals of the meet and confer requirement by mooting the motion entirely or narrowing the issues that require resolution by the trial court. (See *Townsend*, *supra*, 61 Cal.App.4th at p. 1435.) But this is precisely why it would be counterproductive to make such voluntary conduct subject to monetary sanctions.[8]

For these reasons, we conclude that after a motion to compel discovery has been filed, further expenses incurred in meeting and conferring on the discovery dispute, whether it be through private mediation or normal channels of communication, are not compensable as discovery sanctions. Although it is not explicit in the trial court's orders, we infer that each of the $25,000 sanctions awards imposed on Rocket Lawyer and Acendi included some amount of Covington's mediation-related expenses. In her moving papers filed before mediation, Covington sought $10,000 in monetary

_____

[8]      That Acendi also sought mediation-related expenses as monetary sanctions against Covington does not impact our analysis, which is based on the plain meaning of the applicable statutes and related decisional authorities. Although Covington appears to invoke the doctrine of judicial estoppel in asserting that "Acendi should be bound by its initial position that the mediation fees are compensable[,]" she fails to discuss the doctrine's elements, which do not apply here. (See *The Swahn Group, Inc. v. Segal* (2010) 183 Cal.App.4th 831, 842 [judicial estoppel applies when same party has taken two totally inconsistent positions in judicial proceedings and was successful in asserting first position].)

30

sanctions against Rocket Lawyer, and $7,000 against Acendi. Those amounts increased to $64,380 against Rocket Lawyer and $30,267 against Acendi in supplemental declarations submitted after mediation, with the bulk of the additional expenses relating to mediation preparation and attendance. Although the trial court did not award Covington the full amounts she requested, the reductions were not enough to rule out the inclusion of mediation-related expenses in the final award. Accordingly, we instruct the trial court on remand to redetermine an appropriate amount of monetary sanctions against Rocket Lawyer and Acendi without including Covington's mediation-related expenses.

## DISPOSITION

The portions of the trial court's orders imposing monetary sanctions on Rocket Lawyer and Acendi are reversed, and the matter is remanded for the court's redetermination of the sanctions award without inclusion of Covington's mediation-related expenses. In all other respects, the court's orders are affirmed. In the interests of justice, Covington shall recover her appellate costs as to appeal number A165038; as to appeal number A165039, each side shall bear its own costs. (Cal. Rules of Court, rule 8.278(a)(5).)[9]

---

[9] We make this costs disposition after granting Covington's petition for rehearing on this specific matter and receiving responsive briefing from Rocket Lawyer. We deem it appropriate to award Covington her costs on appeal in appeal number A165038 given that Rocket Lawyer did not prevail on the specific appellate arguments it advanced and merely benefited from a meritorious contention raised by Acendi in these consolidated appeals. (Cal. Rules of Court, rule 8.278(a)(5).)

31

_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Petrou, J.

Trial Court:        City & County San Francisco Superior Court

Trial Judge:        Hon. David S. Weinberg

Counsel:            LTL Attorneys LLP, Prashanth Chennakesavan for
                    Appellant

                    Law Office of Ted W. Pelletier, Ted W. Pelletier; Seifert
                    Zuromski LLP, Richard J. Zuromski Jr for Appellant

                    Walzer Melcher & Yoda LLP, Christopher C. Melcher and
                    Cynthia J. Ponce for Petitioner and Respondent

*Moore v. Moore* (*A165038*)
*Moore v. Moore* (*A165039*)